## Commonwealth *versus* Bartilson *et al.*

1. In the first count of an indictment charging defendants with a conspiracy to cheat and defraud, the conspiracy was not laid within the statutory period, but the count charged the commission by the defendants of a series of fraudulent acts "in pursuance and as a renewal of such confederacy, conspiracy and agreement," some of which acts were laid within two years from the finding of the bill. *Held*, that the prosecution was barred by the Statute of Limitations.

2. The second count charged a conspiracy within the statutory period. In a bill of particulars filed under this count divers overt acts of conspiracy were set forth, being for the most part the same acts as were charged in the first count and which were admitted to have been done in pursuance of the original conspiracy. The court being of the opinion that they would not be admissible in evidence under the second count, and that the result of a trial could only be the acquittal of the defendants, quashed this second count. *Held*, that the court erred in this view of the evidence; that .the purpose of the bill of particulars was merely to give the defendants notice of the particular acts relied upon by the Commonwealth to establish the conspiracy, and that it could be altered or supplied to meet the exigencies of the case.

3. When the indictment was quashed the district-attorney gave notice of his intention to remove the case to the Supreme Court, and at the same time moved the court to require the defendants to renew their recognisance, which the court declined to do. *Held*, that it was within the discretion of the court either to hold the defendants to bail pending the certiorari or writ of error, to hold them in their own recognisance, or to discharge them without day; and such action is not reviewable, except, perhaps, for a gross abuse of discretion.

4. Gise *v.* Commonwealth, 31 P. F. Smith 428, explained.

November 13th 1877. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson, Woodward and Sterrett, JJ.

Error to the Court of Quarter Sessions of *Washington county* : Of October and November Term 1877, No. 232.

Indictment of T. A. Bartilson, Joseph Hanen and John H. Little, found on the 22d of May 1877, charging said parties, on the complaint of O. H. P. McCoy, with a conspiracy to cheat and defraud said complainant of his property. The indictment contained two counts, the first of which charged that the defendants, "being persons of evil minds and dispositions, wickedly devising and intending to

[Commonwealth v. Bartilson.]

cheat and defraud one O. H. P. McCoy, on the 20th day of December A. D. 1874, * * * fraudulently, falsely, maliciously and unlawfully, did conspire, combine, confederate and agree together, between and amongst themselves, falsely and fraudulently to cheat and defraud the said O. H. P. McCoy of his moneys, goods, chattels, property and estate;" and then proceeded to state a series of overt acts done in pursuance of the conspiracy. Each of these averments of overt acts is linked to that which precedes it, and to the original general charge of the conspiracy to cheat, by the allegation that it was " in pursuance and as a renewal of said conspiracy, combination, confederacy and agreement, so as aforesaid had and made."

Two of these overt acts were laid within two years of the finding of the indictment, viz.: on the 2d of June and the 26th of July 1875.

The second count of the indictment laid the conspiracy as having been entered into May 21st 1877, and charged in general terms that the defendants did " falsely, fraudulently and maliciously combine, conspire, confederate and agree together, by divers false pretences and subtle means and devices, to obtain and acquire to themselves of and from O. H. P. McCoy, divers large sums of money, and to cheat and defraud him thereof, and did then and there do divers dishonest, malicious and unlawful acts," &c.

On the 6th of August 1877, the defendants applied by petition to the court for an order on the district-attorney to furnish them with a bill of particulars under the second count.

The order was granted, and on the 9th of August a bill of particulars was furnished. The defendants were therein notified that " under the second count of the indictment the Commonwealth expected to prove that the defendants were engaged in an unlawful and fraudulent combination and conspiracy to cheat and defraud O. H. P. McCoy, at the date laid in said count, to wit: the 21st of May 1877, which conspiracy of the said defendants was only arrested by the prosecution and indictment preferred against them."

The bill of particulars then proceeded to state the different overt acts in regard to which the Commonwealth would offer proof, the same as were set forth in the first count in the indictment; adding thereto the fraudulent transfer by Bartilson of his real estate to one John C. Glenn, a person without means, made September 21st 1875, with intent to defraud McCoy, &c.

On the 27th of August defendants moved to quash the indictment, for the following, among other reasons:—

1. The prosecution of the offence charged in the first count is barred by the 77th section of the Act of 31st March 1860: Purd. Dig. 934, pl. 36.

2. The Commonwealth, by the bill of particulars furnished with respect to the second count, is precluded from offering any testimony in support of the said count, other than such as would tend to prove

[Commonwealth v. Bartilson.]

a conspiracy entered into at a date so long prior to the finding of the bill as to be within the provisions of the act aforesaid.

After argument on this motion to quash, the court, Hart, P. J., in an opinion, inter alia, said: " It is conceded by counsel on both sides, that the gravamen or gist of the offence charged is the unlawful conspiracy. And this is evident from the consideration that the authorities are all agreed, that it is not necessary that any act should be done in pursuance of the conspiracy. From the moment the unlawful confederacy is formed the offence is complete, and the conspirators are liable to indictment and punishment, though it may have been followed by no overt act whatever. But it was argued with great force and ingenuity that the conspiracy is renewed and kept on foot by each and every overt act done in pursuance of it, and that, in fact, it is so averred in the count. We would be glad to accept this view of the case if we could. In view of the outrageous character of the series of frauds charged against the defendants, we would strongly incline to open the door for the fullest investigation did the law so permit. But we think the Commonwealth, by the Act of 31st March 1860, has herself barred the door against us."   *   *   *

After a review of the case of Gise v. Commonwealth, 31 P. F. Smith 428, the court continued: " It is the unlawful agreement which constitutes the offence of conspiracy, and when that is once fully formed the statute begins to run. While, later on in time, other offences may follow and flow from the agreement, as embezzlement in the one case, and adultery in the other, yet they do not interrupt the running of the statute, although they may be punished as distinct substantive offences. We take the language of the Supreme Court as a solemn warning, that we are not, by applying the doctrine of continuous offences, and setting up a new conspiracy with each successive overt act, to take down the bar of the statute and open a door which the law has closed."

With regard to the second count the court said: " Although the count charges the alleged conspiracy to have been entered into on the 21st day of May 1877, yet the bill of particulars which the district-attorney was ordered to furnish the defendants shows that the conspiracy is the same as that charged in the first count, and that it 'originated about the month of November 1874,' and that it is to be evidenced by the same overt acts as are set out in the first count, with an addition of one other. Now, under the views we have just expressed in regard to the first count as affected by the Statute of Limitations, and with this solemn admission of the Commonwealth that the two counts are intended to charge the same offence, it would be a vain thing for us to put the defendants to trial on this second count, when we know beforehand that all the evidence which the Commonwealth can offer must be ruled out as inadmissible."

[Commonwealth v. Bartilson.]

The court then ordered the indictment to be quashed, and the defendants to be discharged.

Before they were discharged the district-attorney gave notice of his intention to remove the cause to the Supreme Court by certiorari, and moved the court below to order the defendants to renew their recognisance to abide the issue in said court, which motion was refused.

This refusal and the quashing of the indictment were assigned for error by the Commonwealth in taking out this writ.

*John Add. McIlvaine*, District-Attorney, *A. W. & M. C. Acheson*, *Crumrine & Murdoch* and *John Aiken*, for the Commonwealth.—It is admitted that the crime of conspiracy consists in the agreement to do an unlawful act, but it does not follow that in all cases of conspiracy the prosecution is barred at the end of two years from the formation of the original design. We contend that any overt act done in pursuance of the original agreement is a renewal or continuance of the conspiracy and may be so charged in the indictment. The illegal agreement is carried into every overt act and the parties may be said to " conspire" whenever they attempt to execute their common design, and any act within the statutory period will make them amenable to the charge of conspiracy: People v. Mather, 4 Wendell 230; Commonwealth v. Delany, 1 Grant 225; Commonwealth v. Wishart, 8 Leg. Gazette 137; 1 Bishop's Crim. Law, sects. 437, 440.

The court erred in quashing the second count upon the ground that, from the bill of particulars furnished under this count, it appeared that the offence charged was the same as that charged in the first count, which was barred by the statute.

The question here was, whether there was a fatal defect on the face of the indictment, as it came from the hands of the grand jury. The bill of particulars furnished in response to the defendant's notice was no part of the indictment, and could not be interpolated into the second count, in considering the point raised by the second exception.

It is the common practice in criminal trials to prove antecedent facts and circumstances inside or outside the statutory period to explain the intent with which the particular offence charged in the indictment was done; the statute operates on the crime, not on the evidence. In conspiracy, however, the court thought this was not allowable, because it would be fatal to the prosecution to show that the design to commit the crime existed in the minds of the conspirators more than two years before the finding of the bill.

Where an indictment is quashed at the instance of defendants and without the concurrence of the Commonwealth the defendants are not entitled to an unconditional discharge : People v. Stager, 10 Wendell 434; Keefhaven v. Commonwealth, 2 P. & W. 244;

Mishler *v.* Commonwealth, 12 P. F. Smith 56 ; State *v.* Stout, 6 Halstead 133.

The Commonwealth, acting through her recognised officer, the district-attorney, could of right appeal to her highest tribunal, whether the crime wherewith she charged 'the defendants was indictable and punishable, and until such a decision was rendered, could demand that the defendants be securely held to answer to the indictment, if it should be decided that the lower court had erred in refusing to try them.    This demand she made by her proper officer, coupled with notice of his intention to remove the cause to this court ; but the court refused to detain the defendants and discharged them without day.

*Dougan & Todd, D. S. Wilson* and *D. F. Patterson,* for defendants in error.—The conspiracy is the gist of the indictment, and though nothing be done in prosecution of it the offence is complete of itself : Rex *v.* Best, 1 Salk. 174 ; Collins *v.* Commonwealth, 3 S. & R. 222 ; Commonwealth *v.* McKisson, 8 Id. 420 ; Twitchell *et al. v.* Commonwealth, 9 Barr 212 ; Commonwealth *v.* Curren, 3 Pittsburgh Rep. 145 ; Hazen *v.* Commonwealth, 11 Harris 363. The doctrine of continuing offences has been expressly repudiated in the recent case of Gise *v.* Commonwealth, 31 P. F. Smith 428. The doctrine of renewing an offence, so as to toll the bar of the Statute of Limitations, has no place in the criminal law : People *v.* Mather, 4 Wendell 229 ; 1 Whart. Cr. Law, 7th ed., § 444 ; Commonwealth *ex rel.* Whitaker *v.* The Sheriff, 3 Brewster 394.

Mr. Justice PAXSON delivered the opinion of the court, January 7th 1878.

The first assignment alleges error in quashing the first count of the indictment.    Said count charged the defendants with a conspiracy to cheat and defraud one O. H. P. McCoy of his moneys, goods, chattels, property and estate.    The conspiracy is averred to have been formed on the 20th of December 1874.    This was more than two years prior to the finding of the bill, and upon this ground the court below quashed the count.    It was strongly urged, however, that inasmuch as it was averred in said count that the defendants had in, " pursuance and renewal of said conspiracy," committed divers overt acts specifically described in said count, the date of one of which at least was within the statutory period, there was a continuance and renewal of the conspiracy from time to time, and the statute was thereby tolled.    This is plausible but unsound. The offence charged was the conspiracy.    According to all the authorities the conspiring is the essence of the charge, and if that be proved the defendants may be convicted : Collins *v.* The Commonwealth, 3 S. & R. 220 ; Commonwealth *v.* McKisson, 8 Id. 420 ; Commonwealth *v.* Judd, 2 Mass. 329 ; Commonwealth *v.*

Tibbetts, Id. 536; Commonwealth v. Warren, 6 Mass. 74; State v. Richie, 4 Halstead 293; State v. Buchanan, 5 Harr. & Johns. 317; People v. Mather, 4 Wendell 229. According to the first count the offence was complete on the 20th of December 1874. The overt acts set forth do not constitute the offence. They are the evidence of it, and are sometimes said to be the aggravation of it. An overt act may or may not be unlawful, *per se.* It is because of its relation to an unlawful combination that it becomes obnoxious to the criminal law. The averment that the conspiracy was "renewed" from time to time does not meet the difficulty. If it proves anything it proves too much. The "renewal" of a conspiracy means to begin it again; to re-commence it; to repeat it. From this it is apparent that each renewal is a new offence; a repetition, it is true, of a former one, but still an offence for which an indictment would lie. If, therefore, the overt acts were done or committed in renewal of the conspiracy of December 20th 1874, as charged in the count, they aver distinct offences. It is a well-settled rule of criminal pleading that distinct offences cannot be joined in the same count. This principle is too familiar to need the citation of authority; we will only refer to the latest case: Hutchison v. The Commonwealth, 1 Norris 472. The difficulty in regard to this count arises merely from a mistake in pleading. The date of the conspiracy should have been laid within the statutory period. The Commonwealth must allege and prove a conspiracy within two years. If this cannot be done the Commonwealth has no case. The pleader evidently felt the strain of this part of his case when he introduced the averment that the overt acts were in "renewal" of the original conspiracy. It was practically laying an offence with a *continuando;* it was an attempt to prove the existence of a crime within the statutory period, by showing its commission outside of such period, and that it had been continued down to a time within it. In a recent case in which I delivered the judgment of the court (Gise v. The Commonwealth, 31 P. F. Smith 428), the doctrine was asserted that there is no such thing as a continuing offence; that it is wholly unknown to the criminal law. This language has been somewhat criticized, in view of which I have re-considered it carefully with a view to withdraw or qualify it if found erroneous. Next to being right, nothing would afford me more pleasure than to correct an error. In order to interpret its true meaning the passage must be considered in its connection. The question before us was whether a man who had been indicted in 1876, for bigamy committed in 1868, could be convicted by showing that he had continued the offence during the intervening years by cohabitation with the second woman. It was held that he could not, and that there was no such thing as continuing a completed offence so as to toll the statute. It was not intended to assert the absurd proposition that a man might not

[Commonwealth *v.* Bartilson.]

repeat an offence from day to day, as in the case of maintaining a nuisance, and other familiar instances which might be referred to. This may be done daily for any indefinite period. But a man could not be convicted of maintaining a nuisance charged to have been committed ten years prior to the finding of the bill of indictment by proving that he had continued the nuisance, day by day, to a time within the statutory period. In the sense, therefore, of tolling the statute it cannot be said that a completed offence can be continued. It may be repeated from day to day, but the statute runs from the close of each day, and the indictment must charge the offence to have been committed within the statutory period. This is all that was intended to be said in Gise *v.* The Commonwealth ; it was all that the language referred to implies when read in connection with the subject-matter to which it refers. In this sense the doctrine of that case is re-asserted.

We think the learned judge of the court below was right in quashing the first count. This brings us to the second assignment which alleges error in quashing the second count. This count charged a conspiracy within two years and was in proper form. It sets out no overt acts, being what is sometimes called in criminal pleading the common count. That such a count is sufficient has been repeatedly decided: Hazen *v.* The Commonwealth, 11 Harris 363 ; Twitchell *v.* The Commonwealth, 9 Barr 211; Commonwealth *v.* McKisson, 8 S. & R. 420 ; Rex *v.* Hamilton, 7 C. & P. 448 ; Wharton's Precedents 351. The court below quashed it not because of any defect apparent upon its face, but for reasons *dehors* the record; in other words, for defect in the proof. The district attorney had filed a bill of particulars under the second count, which, as before observed, was general in its nature, setting forth divers overt acts of conspiracy, being for the most part the same acts as were charged in the first count, and which were admitted by the district-attorney to have been done in pursuance of the original conspiracy of December 20th 1874. The court being of opinion that they would not be admissible in evidence under the second count, and that the result of a trial could only be the acquittal of the defendants, quashed the said count. We do not deny the power of the court to quash an indictment for matters not appearing upon its face. This is sometimes done for defects in the process for drawing and summoning the grand jury, or irregularities connected with the jury wheel, and where an indictment is found pending a writ of habeas corpus. It is a power, however, that should be exercised with caution, especially where it is done for defect of proof. This may, and sometimes is supplied at the last moment. The purpose of the bill of particulars was merely to give the defendants notice of the particular acts relied upon by the Commonwealth to establish the conspiracy. It could have been altered or supplied to meet the exigencies of the case,

[Commonwealth v. Bartilson.]

always, of course, upon sufficient notice to the defendants. We think the court below erred in its view of the evidence. The fact that a conspiracy existed on the 21st day of May 1877, or upon any other day within two years of the exhibiting of the bill of indictment, may be shown by the previous acts, conduct or declarations of the parties. The Statute of Limitations affects the crime, not the proof of it. It is rare that a conspiracy can be established by direct proof. As a general rule conspirators do not publish their intentions. Hence it is that their object, and the conspiracy itself, must usually be shown by their acts. It is said in Roscoe on Criminal Evidence, at page 415: " If on a charge of conspiracy it appears that two persons by their acts are pursuing the same object, and often by the same means, the one performing part of an act, and the other completing it for the attainment of the object, the jury may draw the conclusion that there is a conspiracy." All the leading text writers assert this doctrine, and it is sustained by numerous decisions which it is not necessary to refer to. Acts and declarations of the parties prior to the statutory period may be given in evidence, provided they tend to show a conspiracy existing at the time charged in the indictment. It is true they would not be admissible for the purpose of proving a distinct crime barred by the statute. But where in conspiracy an overt act is done within two years, and said act is but one of a series of acts committed by the parties, evidently in pursuance of a common design and to carry out a common purpose, such acts would be evidence, provided they tend to show that the last act was a part of the series and the result of an unlawful combination; and such evidence may satisfy a jury of the existence of a conspiracy at the later period. And this though some of the prior acts may have occurred at a time when, as an independent conspiracy, it would have been barred by the statute. For, as before said, the overt acts are the evidence from which a conspiracy may be inferred. Hence it is that while as a general rule in criminal cases the venue must be laid in the county in which the offence was committed, yet in conspiracy it may be laid in any county in which an overt act has been done by any one of the conspirators. This rule is well settled: Whart. Cr. Law, § 2350; Arch. C. P. 6; Rex v. Scott, 4 East 164; The People v. Mather, 4 Wendell 230. This rests upon the principle that the overt act is evidence of a conspiracy existing at the time and place where the overt act was committed. Of course, the overt act must be such as to tend to show that it was the result of conspiracy. As is said in Arch. C. P. & P. 1056, " Every overt act, to be evidence, must have at least a tendency to prove either the general nature of the conspiracy, or that one or more of the defendants were operating towards effecting that which is charged in the indictment as being the object of the conspiracy." But if the overt act charged in the indictment, or proved to have been done within two years,

[Commonwealth *v.* Bartilson.]

is sufficient to satisfy the jury of the existence of a conspiracy at that time, it is wholly immaterial when the parties thereto first formed the unlawful combination in their minds, or gave effect to it by concert of action. If it has been renewed from time to time, and overt acts committed through a series of years, and one of said acts has taken place within two years, each renewal constitutes a fresh conspiracy, for which an indictment will lie. It has been held that where a conspiracy had been formed outside of the jurisdiction of the court, an overt act committed within the jurisdiction is evidence of a conspiracy there : Rex *v.* Scott, *supra.* And all who accede to a conspiracy after it is formed become conspirators : People *v.* Mather, *supra.* For the reasons given we think the court below erred in quashing the second count.

The third assignment alleges that the court erred in refusing to hold the defendants to bail pending the determination of the issue in this court. It appears that when the indictment was quashed the district-attorney gave notice of his intention to remove the case to this court by certiorari, and at the same time moved the court to require the defendants to renew their recognisance. This the court declined to do. This action of the court is not assignable for error. It was in the sound discretion of the court either to hold the defendants to bail pending the certiorari or writ of error, to hold them in their own recognisance, or to discharge them without day, and such action is not reviewable here, except perhaps, for a gross abuse of discretion. We feel constrained to say, however, that in our judgment, the discharge of the defendants under the circumstances was not a judicious exercise of discretion. In a case in which it clearly appears that an indictment must be quashed, and that no subsequent proceedings can be had, it may be very proper to discharge a defendant. But where there is at least a serious doubt, and the district-attorney announces upon his official responsibility his intention of removing the record to this court for review, it would certainly be the safer course to hold the defendants to bail pending such removal.

The judgment quashing the second count of the indictment is reversed and a *procedendo* awarded.