# Commonwealth of Pennsylvania, Appellant, *v.* F. V. Rockafellow.

*Pleading—Pleas of autrefois acquit and convict.*

A verdict and judgment, whether of conviction or acquittal, under an indictment, is a final adjudication of the question at issue—the guilt or innocence of the defendant. This question, being thus res judicata, cannot again be tried. It is this principle that gives effect to the pleas of autrefois convict and autrefois acquit. To sustain either plea, to a subsequent indictment, the identity of the offenses charged in the two indictments must be shown, and it must appear that the evidence necessary to a conviction on the latter would be sufficient to convict of the offense charged in the former.

Where the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, the plea of autrefois acquit is generally good, but not otherwise. Whether the former acquittal was for the same offense depends on the record pleaded, and not on the argument or inference deduced therefrom. If that record shows that the evidence necessary to support a conviction on the present indictment would have been insufficient to procure a legal conviction on the former, the plea of autrefois acquit is not sustained. The same principles apply to the plea of autrefois convict.

*Banks and banking—Fraudulent receipts by insolvent banker—Act of 1889.*

The design of the Act of May 9, 1889, P. L. 145, manifestly is to protect all depositors from loss through the fraudulent receipt of their moneys by insolvent bankers, and its punitive provisions must be held to extend to all transactions within its purview.

There is no reason in law or morals for permitting a banker to fraudulently procure the moneys of A, B and C, with impunity, because he also succeeded in fraudulently obtaining the money of D, and has been punished therefor, and none is to be found in the statute under consideration. The law will make no such discrimination in favor of those who persist in its violation.

Argued Jan. 11, 1897. Appeal, No. 43, Jan. T., 1897, by the commonwealth, from judgment of Q. S. Luzerne Co., Sept. Sess., 1893, No. 183, sustaining defendant's plea of autrefois convict. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Indictment for receiving money as a banker, with knowledge of insolvency. Before EDWARDS, J.

Defendant pleaded autrefois convict.  Plaintiff demurred to the plea and the court entered judgment for defendant on the demurrer.

*Error assigned* was entry of judgment for defendant on the plea.

*D. A. Fell*, district attorney, and *Gustav Hahn*, with them *James L. Lenahan*, for appellant.—If under this act but one penalty can be imposed, the act does not prevent—it licenses bankers to violate the law.

The true test to ascertain whether a plea of autrefois convict is a good bar, is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first: Heikes v. Com., 26 Pa. 513; Com. v. Trimmer, 84 Pa. 65.

*J. T. Lenahan*, with him *F. W. Wheaton*, for appellee.

OPINION BY SMITH, J., February 16, 1897 :

The defendant in the present case, a banker, carrying on a private bank in the city of Wilkes-Barre, was indicted, September 5, 1893, for having, on the 7th day of February, 1893, received from Anna Maria Meier, a depositor, $700, with knowledge " that he and the said bank were then and there insolvent." On the trial November 19, 1896, he pleaded autrefois convict. As to the facts on which this plea was based, it was agreed by the district attorney and the defendant that on the 2d of June, 1893, the defendant was indicted for having, under the same circumstances and with the same knowledge of insolvency as in the present case and a little more than an hour earlier on the same day, received from Isaac Long, a depositor, $4,600 ; that the defendant was tried on said indictment and found guilty November 25, 1893 ; that January 12, 1894, he was sentenced to pay a fine of $1,250 and undergo an imprisonment in the state penitentiary for the eastern district for the period of two years and two months ; and that this sentence has been complied with.  On demurrer by the district attorney, the trial judge held that the plea was sustained by these facts, and entered judgment for the defendant.  Thereupon an appeal was entered on the part of the commonwealth.

Both indictments were based on the Act of May 9, 1889, P. L. 145, the provisions of which are as follows: " That any banker, broker or officer of any trust or savings institution, national, state, or private bank, who shall take and receive money from a depositor with the knowledge that he, they or the bank is at the time insolvent, shall be guilty of embezzlement, and shall be punished by a fine in double the amount so received, and imprisoned from one to three years in the penitentiary."

While prior to this act there was no statute in Pennsylvania making it a crime for a banker to receive deposits when knowing himself to be insolvent, and the general depositor became a mere creditor, such conduct has always been regarded as fraudulent. As was said by Chief Justice FULLER in Railway Company v. Johnston, 133 U. S. 566 (quoting from another case): " A banker who is, to his own knowledge, hopelessly insolvent, cannot honestly continue his business and receive the money of his customers; and although having no actual intent to cheat and defraud a particular customer, he will be held to have intended the inevitable consequences of his act, i. e., to cheat and defraud all persons whose money he receives, and whom he fails to pay before he is compelled to stop business." That the legislature had the power to declare it a crime for a banker to take a deposit when he knows that his bank is insolvent, cannot be doubted; and by the act of May 9, 1889, this has been done. That statute defines the offense, and classifies it as an act of embezzlement. And while, as has been said, this classification may not have been well chosen, it indicates the legislative intent to group the offense with that class of crimes against the right of property which are akin to larceny. Embezzlement consists of " the fraudulent appropriation by one of the money entrusted to his care by another: " CLARK, J., 114 Pa. 558. It is in substance, and in its moral aspect essentially a larceny, aggravated rather than palliated by the violation of a trust, and embracing all the elements of larceny except the felonious taking: 6 Am. & Eng. Ency. of Law, 456. The offense with which the defendant is here charged involves also a breach of trust, necessarily committed upon the receipt of each and every deposit which he accepted with knowledge of his insolvency. A general deposit is but a loan, and its receipt by a banker who

knows himself to be insolvent is a fraudulent appropriation of the money received. In Com. v. Junkin, 170 Pa. 194, Mr. Justice DEAN, in discussing this statute says: "Its aim is to punish dishonesty; the moral guilt which prompts to falsehood and deception; for there is necessarily moral guilt on the part of a banker, who, with knowledge of insolvency, receives as a bank deposit the money of a customer; by necessary implication, when he so receives it, he says to the depositor, 'My bank is solvent, and is able to repay this amount when called for;' if such were not the implied representation, relied on, too, by the depositor, he would not leave his money. To constitute the criminal intent, it is not, however, necessary that the banker at the time intended to defraud the depositor; his intention to repay may have existed; it is the concealment of his present, to him known, inability to pay, and in that condition, receiving, as part of the funds of the bank, the depositor's money, which he knew, without the false representation, he would not receive, that constitutes the criminal intent."

But whether considered as an act of embezzlement, from the legislative point of view, or as a fraudulent appropriation of a depositor's money with criminal intent, from the judicial point of view, it is difficult to perceive how the taking of the money of A, at one time, can be regarded as an integral part of the separate act of taking the money of B, in the absence of A, and at another time. It is not, in fact or in effect, and there is no principle of law to sustain such a proposition. That the receipt of a single deposit, under the circumstances described in the statute constitutes a complete offense, cannot be doubted. Notwithstanding certain features in common, there is no relation or interdependence between such an act and the receipt of a different deposit, from a different person, at a different time. One cannot be included in the other, merely by reason of the knowledge of insolvency common to both. Neither the insolvency of the banker, nor his knowledge of it, is criminal; they are but the conditions under which the receipt of a deposit is declared a crime. As logically demonstrated by Mr. Justice DEAN, the receipt of a deposit, under the circumstances described, is through an implied false representation. Yet it cannot be said that the obtaining of money from A by a false pretense includes the obtaining of money from B, by the same false pretense, by

reason of the fraudulent purpose common to both. As well might it be held that a larceny of the goods of A includes a larceny of the goods of B by reason of the felonious purpose common to both.

The design of the Act of May 9, 1889, P. L. 145, manifestly is to protect all depositors from loss through the fraudulent receipt of their moneys by insolvent bankers, and its punitive provisions must be held to extend to all transactions within its purview. This interpretation of the statute is not only in advancement of its purpose but is reasonably demanded by its language. There is no ambiguity in its· phraseology or meaning. It speaks of a depositor, his money and its receipt as one transaction. The assertion that it refers to depositors as a class only, is in contradiction of its express terms. This contention would substitute for what is plainly and accurately expressed, that which is not stated and is beyond the scope of its provisions. In Com. v. Rockafellow, 163 Pa. 139, the Supreme Court has said that this act refers to the receipt of money " from a depositor," and that " the offense clearly and distinctly defined is the fraudulent receipt of the money of a depositor ; " thus defining the offense as consisting of a single fraudulent receipt from one person. That this is the judicial view is also evident from the discussion of the subject in Com. v. Junkin, supra. There is no reason in law or morals for permitting a banker ·to fraudulently procure the moneys of A, B, and C, with impunity, because he also succeeded in fraudulently obtaining the money of D, and had been punished therefor, and none is to be found in the statute under consideration. The law will make no such discrimination in favor of those who persist in its violation. The statute declares a single receipt of money by an insolvent banker to be an offense, and prescribes as part of the punishment a fine in double the amount so received. To hold that a conviction and sentence for the fraudulent receipt of one deposit is a bar to prosecution for subsequent violations would practically nullify this part of the statute.

The argument in support of the appellee's contention assumes that the statutory offense consists chiefly in the banker's knowledge of his insolvency. His insolvency, however, is but a misfortune, not a crime. Neither this, nor his knowledge of it, can of itself work harm to the public. It is only when an insolvent

banker receives money from a depositor, that the mischief arises against which the statute was designed to protect the public. The two elements—knowledge of the insolvency, and the receipt of a deposit—must coexist to constitute the offense.

The argument that a banker may, by receiving numerous deposits with knowledge of his insolvency, incur penalties far outrunning, in the aggregate, the natural term of human life, deserves little consideration. In the business of banking, properly conducted, the fact of insolvency cannot long remain undetected by those conducting it, and when this point is reached the purpose of the statute requires that the business be suspended. The banker who continues it, with this knowledge, deliberately invites the penalties prescribed by the statute, and cannot complain that by multiplying his offenses he has exposed himself to penalties of corresponding magnitude. In the abandonment of the forbidden acts lies the road to safety.

A verdict and judgment, whether of conviction or acquittal, upon an indictment, is a final adjudication of the question at issue—the guilt or innocence of the defendant. This question, being thus res judicata, cannot again be tried. It is this principle that gives effect to the pleas of autrefois convict and autrefois acquit. To sustain either plea, to a subsequent indictment, the identity of the offenses charged in the two indictments must be shown, and it must appear that the evidence necessary to a conviction on the latter would be sufficient to convict of the offense charged in the former. As was said in Com. v. Trimmer, 84 Pa. 65: " Where the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, the plea of autrefois acquit is generally good, but not otherwise. Whether the former acquittal was for the same offense depends on the record pleaded, and not on the argument or inference deduced therefrom. If that record shows that the evidence necessary to support a conviction on the present indictment would have been insufficient to procure a legal conviction on the former, the plea of autrefois acquit is not sustained." The same principles apply to the plea of autrefois convict.

The effect to be given to a plea based on the judgment on a prior indictment is not due to the circumstance that such judgment was a conviction. It is because the judgment pleaded

was a final adjudication of the question of the defendant's guilt or innocence of the offense charged in that indictment. The same effect would be given to the judgment had he been acquitted, and pleaded autrefois acquit. If a conviction on the first indictment may be pleaded in bar of the second, an acquittal may be pleaded with like effect. Had the result of the former trial, therefore, been an acquittal, it would, on the principle contended for by the appellee, have been as fully a bar to conviction on the later indictment as the judgment now pleaded. The consequences of such a conclusion are obvious. Should any depositor commence a prosecution, and fail to prove the charge, no prosecution by any other depositor could be sustained. Whatever the cause,—whether a failure to prove that the defendant was a banker, or that he was insolvent, or that he knew of the insolvency,—an acquittal would protect him against any further attempt at punishment, however numerous his violations of the statute. Nor would such immunity necessarily rest on a bona fide attempt at conviction. Nothing would be easier than a collusive prosecution, brought for the purpose of placing an acquittal on record, to forestall a real effort to bring the offender to justice.

From an examination of the record in the two cases, it is manifest that the defendant could not have been convicted on the first indictment by the evidence necessary to conviction on the second. The offense consisting of his receipt of money from Isaac Long, with knowledge of his insolvency, could not be proved by evidence of his receipt of money from Anna Maria Meier, with like knowledge. Evidence of the latter, indeed, would not even be admissible except to show that the defendant was a banker, and it might not be necessary for this purpose, as the defendant's business could be proved by other depositors. The receipt of the latter deposit could not be shown as a distinct violation of the statute, or as an integral part of the offense charged in the indictment, much less could it be held sufficient to convict of that offense. Under the test recognized and adopted in Com. v. Trimmer, supra, the defendant's plea of autrefois convict cannot be sustained.

The case of the People ex rel. Tweed v. Liscomb, 60 N. Y. 559, is clearly not authority for the appellee's contention. The question presented here was not raised or involved in Tweed's

case. It was there one of practice, and, as stated by Judge
RAPALLO, was, " whether several separate and distinct offenses,
each amounting to a misdemeanor, upon which an indictment
could be framed, may be charged in one indictment in separate
counts, and the prisoner put upon his trial for all the alleged
offenses at the same time, before the same jury; and, in case
the jury render a general verdict of guilty on all the counts,
whether the court has power to pronounce a separate sentence
on each count upon which the prisoner is found guilty, and thus
aggregate sentences on a single indictment and trial to an extent
far in excess of the maximum punishment prescribed by statute
for the grade of offense for which the prisoner has been indicted
and tried." It was held that under the laws of the state of New
York but one judgment could be pronounced upon one indict-
ment, no matter how many counts it contained, and that the pun-
ishment imposed could not exceed the maximum punishment
prescribed for the highest offense charged in the indictment.
Opinions were written by Judges ALLEN and RAPALLO, in which
the history and practice of uniting more than one offense in an
indictment are exhaustively reviewed; and while they agree in
the conclusion that but one sentence can be imposed, they do
not pretend to pass upon the question whether the 220 counts
in the Tweed indictment were for distinct offenses or not. The
decision turned on the question whether the " several separate and
distinct offenses, each amounting to a misdemeanor upon which
an indictment could be framed" and set out in the indictment,
could form the basis of separate cumulative sentences. That
they were " separate and distinct offenses " was necessarily con-
ceded in order to pass upon the main question. Judge ALLEN,
in speaking of the character of the offense and the inadequacy
of the statutory punishment upon a single conviction, said:
" The remedy was by several indictments, if the offenses were
distinct;" and on the same point Judge RAPALLO said that
" separate and cumulative punishments can only be secured by
separate indictments and trials for each offense." From this it
will be seen that both judges recognized the right to prosecute
for similar offenses under separate indictments. The error in
Tweed's case lay in joining the offenses in one indictment, in-
stead of presenting them separately.

The offenses upon which the controversy arises in the present

case are embraced in separate indictments, found at different terms of the court, and separately prosecuted. Therefore, the controlling principle of Tweed's case can have no application. Furthermore, in Pennsylvania, (contrary to the law of New York) the joinder of distinct offenses in the same indictment, when not repugnant in their nature and legal incidents, is permitted, and separate sentences may be imposed under each count: Com. v. Sylvester, Brightly's Reports, 331; Com. v. Birdsall, 69 Pa. 482; also Staeger v. Com., 103 Pa. 469, and cases there cited.

Cases in our own state growing out of police regulations, designed for the preservation of order, the observance of the Sabbath, the prevention of extortion, etc., throw little if any light on the question before us. The trend of decision, in the reported cases having any true analogy with the present, is fully consistent with the conclusions we have reached.

Judgment reversed, and judgment of respondeat ouster.