## Commonwealth, Appellant, v. Gouger.

*Appeals—Interlocutory order—Order to enter bail—Criminal law.*

An order quashing an indictment coupled with a direction directing defendant to give bail for his appearance at the next term is not an interlocutory order from which no appeal lies.  The order is final, although it does not have the effect of an acquittal of the defendant.

*Criminal law—Election law—Fraud at primary elections—Act of June 8, 1881, P. L. 70.*

Under the Act of June 8, 1881, P. L. 70, entitled "An act to prevent bribery and fraud at nominating elections, nominating conventions, returning boards, county or executive committees, and at election of delegates to nominating conventions in the several counties in this commonwealth," an indictment cannot be maintained which alleges that at a nominating or delegate election commonly known as a primary election, the defendant offered bribes to different electors to vote for him for the office of county chairman.  The purpose of the act was to prevent bribery in the nomination of candidates to be voted for at a subsequent election, and does not apply to an election of officers of a party organization by direct vote of the qualified electors of the party.

*Statutes—Construction of statutes—Province of the court.*

In the construction of statutes it may sometimes become necessary to transpose words or even to supply or strike out a word which the context shows was omitted or inserted by mistake; but where an enactment is plain and sensible, and, according to any meaning, broad or narrow, proper or technical, which may be ascribed to the words, does not apply to the case in hand, it is not permissible for the courts to add or omit words in order to make it so apply even though it may be clear to them that the case is as fully within the mischief to be remedied as the cases provided. This would be not to construe, but to amend the law, which is within the exclusive province of the legislature.

Where a court has gone to the verge of its powers of construction, there will sometimes remain what is termed casus omissus, a case within the mischief to be remedied and possibly within the general intent of the legislature as disclosed by the act, and yet not provided for therein. In such case the legislature alone can cure the defect.

*Criminal law—Election law—Fraud at primary elections—Bribery of a member of an election board—Act of June 8, 1881, P. L. 70, sec. 6.*

Under section 6 of the act of June 8, 1881, which makes it a misdemeanor to "endeavor to influence a member of a county or executive committee of any party, a judge or clerk of any return board in the discharge, performance or nonperformance of any act, duty or obligation pertaining to such office," an indictment may be maintained which charges that the defendant offered money to a member of the election board at a primary election to influence him to have the vote of the ward cast and counted in favor of a certain person for the office of county chairman.

*Criminal law—Information—Practice—Indictment.*

An indictment need not conform precisely with the phraseology of the information provided the offense charged is the same in substance. The fact that the information does not contain as full and specific a statement of the offense as the indictment does, furnishes no ground for quashing the latter. If there is room for surprise an application for time to meet the graver charge will be allowed.

*Criminal law—Practice—Charge of different offenses—Indictment.*

It cannot be objected in error, or on demurrer, or in arrest of judgment that two or more offenses of the same nature on which the same or similar judgments may be given, are contained in different counts of the same indictment.

An indictment will not be quashed for misjoinder of counts, where all of the distinct acts alleged in the different counts are charged to have been committed to influence the same election and to accomplish a single result, namely, the election of the defendant to the office of county chairman.

*Criminal law—Indictment—Quashing indictment—Quashing counts.*

Where certain counts of an indictment are good and others are bad, the court may quash the bad counts and leave the good counts stand.

Argued May 5, 1902. Appeal, No. 34, Jan. T., 1903, from order of Q. S. Peace Co., Sept. T., 1901, No. 11, quashing indictment in case of Commonwealth v. William L. Gouger. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER JJ. Reversed in part.

Indictment for bribery at a primary election. Before LITTLE, P. J.

The indictment was as follows:

### " INDICTMENT.

" In the court of quarter sessions of the peace for the county of Montour.

" September Sessions, 1901.

" MONTOUR COUNTY, SS :

" The Grand Inquest of the commonwealth of Pennsylvania, inquiring for the county of Montour, upon their respective oaths and affirmations, do present, that on the second day of August in the year of our Lord one thousand nine hundred and one, at the county aforesaid, and within the jurisdiction of this court, a nominating or delegate election, commonly known as a primary election, was held by the qualified electors of the Republican party residing in the county of Montour, at the several voting districts and precincts throughout the said county for the purpose of electing a delegate to the ensuing state convention of the said Republican party and of nominating candidates for the various county offices at an ensuing county convention of the said Republican party held on the third day of August in the year aforesaid at the courthouse in Danville, in said county to be voted for at the ensuing general state election in November in the year aforesaid and for the purpose of nominating and electing officers for the management, government and control of the said Republican party in the county of Montour, and that, at the said nominating or delegate election and county convention, Henry M. Schoch was returned elected to the office of delegate to the said state Republican nominating convention; that S. Y. Thompson was elected and nominated for the office of associate judge of said county of Montour; that J. C. Miller was elected and nominated for the office of prothonotary of the said county; that C. E. Cook was

elected and nominated for the office of county treasurer of said county; and that William L. Gouger was returned and elected to the office of county chairman of the Republican party in said county of Montour;

"That at the said nominating or delegate election and convention, the said William L. Gouger and David Ruckle were rival candidates for the said office of county chairman of the Republican party in the said county in Montour and ballots were cast for each of them by the said qualified electors at the said nominating or delegate election:

"And the Grand Inquest, aforesaid, upon their respective oaths and affirmations aforesaid do further present, that said William L. Gouger, late of said county, on the thirtieth day of July, in the year of our Lord one thousand nine hundred and one, at the county aforesaid and within the jurisdiction of this court, with force and arms, being then and there a candidate for the said office of county chairman of the Republican party in said county of Montour at the said nominating or delegate election so as aforesaid held on the second day of August in the year aforesaid, unlawfully, wilfully, corruptly and maliciously, did directly offer and promise to give to one Edward L. White, a resident of Mahoning township, in said county of Montour, and said White being then and there a qualified elector entitled to vote at the said nominating or delegate election, the sum of five dollars in money as a gift or reward, on condition that the said elector should cast and give his vote at the said nominating or delegate election for him the said William L. Gouger for the said office of county chairman at the said ensuing election on the said second day of August, contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania.

"And the Grand Inquest, aforesaid, upon their respective oaths and affirmations aforesaid, do further present, that, afterwards, to wit: On the day and year aforesaid, at the county aforesaid, and within the jurisdiction of this court, the said William L. Gouger, being then and there a candidate for the office of county chairman of the Republican party in the county of Montour, at a nominating or delegate election held as aforesaid, for the purpose aforesaid, on the second day of August,

in the year aforesaid, with force and arms, unlawfully, wilfully, corruptly and maliciously did directly offer and promise to give to one Edward L. White, a qualified elector, then and there, and then and there being entitled to vote at said nominating or delegate election to be held on the second day of August in the year aforesaid, the sum of five dollars in money as a gift or reward, on condition that he the said elector should not use his influence against him and for David Ruckle for the said office of county chairman of the Republican party at the said nominating or delegate election, the said David Ruckle, being then and there a rival candidate of the said Gouger for the said office, contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania.

" And the Grand Inquest, aforesaid, upon their respective oaths and affirmations aforesaid, do further present, That the said William L. Gouger, afterwards, to wit : On the day and year aforesaid, at the county aforesaid, and within the jurisdiction of this court, the said William L. Gouger, being then and there a candidate for the office of county chairman of the Republican party in the said county of Montour at a nominating election or delegate election to be held by the qualified electors of the said party in the county aforesaid, on the day aforesaid for the purposes aforesaid, the said Gouger then and there unlawfully, wilfully, maliciously and corruptly did directly offer and promise to give to Edward L. White, the said White being then and there a qualified elector and entitled to vote at the said nominating election of the said Republican party, the sum of five dollars in money as a gift or reward, on condition that the said elector should use his influence at the said nominating or delegate election so that the said William L. Gouger should be voted for and not voted against and that David Ruckle being then and there a rival candidate for the said office should not be voted for at the said nominating election or delegate election of the said Republican party, contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania.

"And the Grand Inquest, aforesaid, upon their respective oaths and affirmations aforesaid, do further present, That afterwards,

to wit: On the thirtieth day of July, in the year aforesaid, at the county aforesaid, and within the jurisdiction of this court, the said William L. Gouger, being then and there a candidate for the office of county chairman of the Republican party in Montour county, at a nominating election or delegate election to be held by the qualified electors of the Republican party at the county aforesaid, the places aforesaid, and for the purposes aforesaid, and on the day aforesaid, unlawfully, wilfully, maliciously and corruptly did directly offer and promise to give to one, Harry E. Seidel, a qualified elector, residing in the second ward of . Danville and entitled to vote at the said nominating election or delegate election of the said Republican party, the sum of five dollars in money, and a day's wages, being also a consideration in money, as a gift or reward, and on condition that the said Harry E. Seidel would use his influence at the said nominating or delegate election so as to procure him the said Gouger to be voted for at the said election for the said office of county chairman of the Republican party in Montour county, contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania.

" And the Grand Inquest aforesaid, on their respective oaths and affirmations aforesaid, do further present, that, afterwards, to wit: On the thirtieth day of July, in the year aforesaid, at the county aforesaid and within the jurisdiction of this court, the said William L. Gouger, being then and there a candidate for the office of county chairman of the Republican party in Montour county, at a nominating election or delegate election to be held by the qualified electors of said Republican party on the second day of August, in the year aforesaid, at the county aforesaid, and the several precincts aforesaid and for the purposes aforesaid with force and arms, unlawfully, wilfully and maliciously and corruptly did directly offer and promise to give to the said Harry E. Seidel, he being then and there an elector and entitled to vote at the said nominating election of the said party, the sum of five dollars in money, and his day's wages, being also a valuable consideration in money, as a gift, or reward, on condition that he the said elector would use his influence for the said William L. Gouger at the said nominating election or delegate election so as to procure him the said William L. Gouger to be

voted for at the said election and to use his influence against David Ruckle, the said Ruckle being then and there a rival candidate for the said office of county chairman to prevent the election of the said David Ruckle at the said election and nominating convention, contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania.

" And the Grand Inquest aforesaid, upon their respective oaths and affirmations aforesaid, do further present, that, afterwards, to wit : on the day and year aforesaid, at the county aforesaid, and within the jurisdiction of this court, the said William L. Gouger, being then and there a candidate for the office of county chairman of the Republican party in Montour county, at a delegate election to be held by the qualified electors of the said party, at the county aforesaid, in the voting districts aforesaid, on the second day of August, in the year aforesaid, and for the purposes aforesaid, with force and arms, then and there on the said thirtieth day of July, unlawfully, wilfully, maliciously and corruptly did by offer and promise of money, to wit : The sum of five dollars and a day's wages endeavor to influence Harry E. Seidel in the discharge and performance of his duty and obligation pertaining to his office, the said Harry E. Seidel being then and there a member of the county committee or executive committee of the Republican party of Montour county for the second ward of Danville, in said county, and by virtue of his said office being then and there a member of the election board at the said nominating election and delegate election and exercising supervision and control thereof, the said William L. Gouger well knowing the premises, and then and there endeavoring unlawfully and corruptly to influence the said Harry E. Seidel, as a member of the said executive committee to have the vote of the said ward cast and counted in his favor for the said office of county chairman and against his rival David Ruckle at the said election, contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania.

" And the Grand Inquest aforesaid, upon their respective oaths and affirmations, aforesaid, do further present, that afterwards, to wit : On the first day of August, in the year aforesaid, at the

county aforesaid, and within the jurisdiction of this court, the said William L. Gouger, being then and there a candidate for the office of county chairman of the Republican party of Montour county at a nominating election to be held by the qualified electors of the said party in said county at the several voting districts or precincts aforesaid, on the second day of August, in the year aforesaid and for the purposes aforesaid, then and there unlawfully, wilfully and corruptly, with force and arms, did offer and promise to give five dollars in money as a gift or reward, to one James Bitler, the said Bitler being then and there a qualified elector residing in Anthony township, in said county and entitled to vote in said district at said nominating or delegate election, on condition that said elector would use his influence at the said nominating or delegate election in favor of him the said Gouger to carry the township at the said election for him and procure him to be voted for and against his rival for the said office, David Ruckle, he the said Ruckle being then and there a candidate for the said office of county chairman, contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania.

"And the Grand Inquest aforesaid, upon their respective oaths and affirmations aforesaid, do further present, that afterwards, to wit: On the first day of August, in the year aforesaid, at the county aforesaid and within the jurisdiction of this court, the said William L. Gouger, being then and there a candidate for the office of county chairman of the Republican party in Montour county, at a delegate election to be held by the qualified electors of said party at the several voting districts and precincts throughout said county, on the second day of August, in the year aforesaid, for the purposes aforesaid, the said Gouger, then and there, with force and arms, unlawfully, wilfully, maliciously and corruptly did offer and promise to give, as a gift or reward, to one William Robinson, a resident of Washingtonville, in said county, and a qualified elector entitled to vote at said Republican nominating or delegate election the emolument and office of postmaster of the borough of Washingtonville, on condition that he the said elector would use his influence at the said nominating or delegate election to procure him the said Gouger to be voted for at the said election and

nominating convention of the said Republican party for the said office of county chairman, contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania.

"And the Grand Inquest aforesaid, upon their respective oaths and affirmations aforesaid, do further present, that on the thirtieth day of July, in the year aforesaid, at the county aforesaid, and within the jurisdiction of this court, and at divers other times prior to the second day of August in the year of our Lord one thousand nine hundred and one, the said William L. Gouger, being then and there a candidate for the office of county chairman of the Republican party in said county at a nominating or delegate election to be held by the qualified electors of the Republican party, in said county, at the various voting places throughout the said county on the second day of August, in the year aforesaid, and being then and there such candidate, the said William L. Gouger, with force and arms, unlawfully, wilfully and corruptly did offer and promise money, situations, appointments, offices, emoluments and other valuable things as gifts and rewards on condition that certain electors of the said Republican party, and entitled to vote at said election, to wit: Edward L. White, Harry E. Siedel, James Bitler, William Robinson and divers other electors whose names are to the grand jurors unknown, should vote and use their influence to procure him the said Gouger to be voted for at the said election for the said office of county chairman, and knowingly did permit and procure others whose names are to the grand jury unknown to offer and promise money, offices and other valuable things as gifts or rewards on condition and for the purpose that the said electors to whom the said promises were made should use their influence and procure the said William L. Gouger to be voted for at the said nominating or delegate election for the said office of county chairman of the Republican party of Montour county, contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania."

The court quashed the indictment.

*Error assigned* was the order quashing the indictment.

· *Thomas C. Welsh,* district attorney, and *James Scarlet,* for appellant.

·*Edward Sayre Gearhart* and *H. M. Hinckley,* for appellee.

OPINION BY RICE, P. J., October 13, 1902:

This is an appeal from an order quashing an indictment containing nine counts. It is contended that this was an interlocutory order from which no appeal lies, because it was coupled with an order, made on the district attorney's motion, directing the defendant to give bail for his appearance at the next term. This position is not tenable. The order was final although it did not have the effect of an acquittal of the defendant. Holding him to bail to answer a new indictment based on the same information and commitment or to answer the present indictment in case of reversal did not change the nature of the order. See Commonwealth v. Bartilson, 85 Pa. 482.

All of the counts of the indictments were evidently intended to be drawn under the Act of June 8, 1881, P. L. 70, entitled "An act to prevent bribery and fraud at nominating elections, nominating conventions, returning boards, county or executive committees, and at election of delegates to nominating conventions, in the several counties in this commonwealth."

The indictment alleges generally, that at a nominating or delegate election, commonly known as a primary election, held by the qualified electors of the Republican party at the several voting districts and precincts of the county, the defendant and David Ruckle were rival candidates for the office of county chairman of said party, that ballots were cast for each of them by the qualified electors at the said election, and that the defendant was returned and elected to the office.

Four of the counts allege that offers and promises of bribes were made by the defendant to four different electors of four different districts, on condition, in the case of one elector, that he should cast his vote at the election above referred to for the defendant for the office of county chairman, and, in the case of each of the other electors, that he should use his influence at

the same election in favor of the election of the defendant to that office. In short, these counts charge bribery or attempted bribery of electors at an election of an officer of a party organization by direct vote of the qualified electors of the party. Upon appeal from an order quashing the indictment, we must assume that it correctly describes the nature of the election, to influence which the bribes were offered or promised. The fact that a primary election for the nomination of candidates for public offices to be filled at the ensuing general election was held at the same times and places and by the same officers at which and by whom the election of county chairman was held cannot affect the question for decision. The remaining counts, excepting the sixth, are of the same nature, and need not be noticed, further than to say, that if the four counts just referred to cannot be sustained, neither can they.

Do these counts charge indictable offenses? The determination of this question requires us to construe the 1st section of the act of 1881.

Taking bribes by electors and corruptly influencing or intimidating electors were offenses punishable under the Penal Code of 1860, and earlier statutes. Speaking of these provisions the revisors said: " The 50th and 51st sections will be found to be amendments of existing laws punishing the bribery of electors ; a crime which saps the very foundation of our entire political system; substantially, they are the same as the 122d and 123d sections of the Act of July 2, 1839, P. L. 546, except that the offenses have been more precisely defined and the punishments thereof made to bear a more just relation to the enormity of the crimes: " Report on the Penal Code, 20. It is apparent, however, that these provisions related to the election of public officers, and so far as we are aware were never understood to apply to primary elections. This was the view taken by the Supreme Court in Commonwealth v. Wells, 110 Pa. 463, where the subject of the application to primary elections of the provisions of the act of 1839 relative to wagering upon the result of " any election within this commonwealth " was under consideration. See, also, Leonard v. Commonwealth, 112 Pa. 607, at p. 623. But as was forcibly declared by Mr. Justice PAXSON in the case last cited, " many of the frauds which affect elections, and sometimes thwart

the will of the people, are perpetrated in what may be termed the preliminary stages of the election; in those proceedings by means of which candidates are selected for the people to vote for at the general election." In another part of the opinion he says : " In many portions of the state, as is well known, a nomination by a convention of one of the parties is practically the equivalent of an election; in some instances it is the precise equivalent, as in the case where there are two persons to elect, and the elector is allowed by law to vote for but one." But, even leaving out of view these special instances in which the influence of the primary elections is the most potent, it is plain, that in a state, where, as a rule, public officers are selected from amongst candidates nominated by political parties, statutory provisions were not wholly adequate for the suppression of bribery, and the prevention of its influence upon the selection of public officers, which did not include the bribery of delegates to nominating conventions and the bribery of the electors, who, by direct vote, or through delegates chosen by them, nominate the candidates to be voted for. As we have seen, the act of 1860 did not include this form of bribery. The act of 1881 was passed to remedy this and other defects in existing laws. The things, which the 1st section forbids " a candidate for any office within this commonwealth " to do, are the giving, offering or promising to give, and the procuring of another to give, offer or promise to give, to any elector, any gift or reward, etc., " on condition that such elector shall cast, give, retain or withhold his vote, or use his influence at a nominating election or delegate election, or cast, give or substitute another to cast or give his vote or use his influence at a nominating convention, for or against the nomination of any particular candidate for nomination, so as to procure such person to be voted for, at any election to take place." The manifest purpose of the legislature was to prevent bribery in the nomination of candidates to be voted for at a subsequent election, and to carry out this purpose this section was so framed as to apply to cases where, by the rules of a party, its candidates for public office are nominated by direct vote of the electors of the party, as well as to cases where they are nominated by a convention of delegates. As would be expected from a reading of the title of the act, the section relates to bribery,

at "nominating elections," at "nominating conventions," and at the "election of delegates to nominating conventions," and we can find nothing in the body of the act which clearly shows that the legislature intended the section to have a broader scope than is indicated by the title, and to apply to an election of officers of a party organization by direct vote of the qualified electors of the party. We fully appreciate the force of what the commonwealth's counsel say as to the importance to the whole body politic of placing the same safeguards around such an election as this section provides for the prevention of bribery at nominating elections, delegate elections and nominating conventions. Speculation as to whether the omission of the legislature to do so was the result of accident or was intentional would not be profitable ; for in either case the omission is not one which the courts may supply by construction.

In a statute the meaning of words may be this or that, according to the subject, context and other particular circumstances. The province of the courts is to determine the meaning the legislature intended them to have. The rule of strict construction in favor of the accused is not violated by giving the words a reasonable meaning, according to the sense in which they were intended, even though in a different connection a more restricted meaning would be ascribed to them. "Strict construction is not the same thing as construing everything to defeat the action," or, we may add, the prosecution. "This is not what is meant by the expression :" THOMPSON, J., in Bartolett v. Achey, 38 Pa. 273. In the construction of statutes it may sometimes become necessary to transpose words or even to supply or strike out a word which the context shows was omitted or inserted by mistake. Instances are not lacking in the reports where this has been done in order to effectuate the intention of the legislature. But where an enactment is plain and sensible, and, according to any meaning, broad or narrow, popular or technical, which may be ascribed to the words, does not apply to the case in hand, it is not permissible for the courts to add or omit words, in order to make it so apply, even though it may be clear to them that the case is as fully within the mischief to be remedied as the cases provided for. This would be, not to construe, but to amend the law, which is within the exclusive province of the legislature.

"Whatever may have been the legislative thought, no ambiguity exists in what they have said, and where the words of a statute are plainly expressive of an intent, the interpretation must be in accordance therewith:" THOMPSON, J., in Bradbury v. Wagenhorst, 54 Pa. 180. The rule of strict construction, which is applicable here, requires, at least, that no case shall fall within a penal statute which does not comprise all the elements which, whether morally material or not, are in fact made to constitute the offense as defined by statute: Endlich on Interpretation of Statutes, sec. 334. Hawkins states the rule thus: "No parallel case, which comes within the same mischief, shall be construed to be within the purview of it (the statute), unless it can be brought within the meaning of the words:" 2 Hawkins, P. C. (Curw. ed.) p. 188, sec. 16. Therefore if a case is fully within the mischief to be remedied, and is even of the same class and within the same reason as other cases enumerated, still, if not within the words, construction will not be permitted to bring it within the statute: Bishop on Statutory Crimes, sec. 220. Courts are less ready to extend criminal statutes, to include cases within the mischief, but not the words, than to restrain them so as to exclude cases within the words, but not the mischief: Rex v. Parker, 2 East P. C. 592. When a court has gone to the verge of its powers of construction, there will some times remain what is termed a casus omissus—a case within the mischief to be remedied and possibly within the general intent of the legislature as disclosed by the act—and yet not provided for therein. In such case the legislature alone can cure the defect. See Bishop on Statutory Crimes, sec. 146. Applying these familiar principles to the case in hand, we are compelled to hold that the counts thus far discussed do not charge offenses made punishable by the act of 1881, supra.

The sixth count was evidently intended to be drawn under the second paragraph of the 6th section of the act, which makes it a misdemeanor for any person, whether a candidate for office or not, by the offer or promise of money, office, appointment, employment, testimonial, reward or other thing of value, or by threats or intimidation—we quote from the language of the act—to "endeavor to influence a member of a county or executive committee of any party, a judge or clerk

of any return board, in the discharge, performance or nonper-
formance of any act, duty or obligation pertaining to such
office." This count charges that Harry E. Seidel was a member
of the county or executive committee of the Republican party
of Montour county for the second ward of Danville, that by
virtue of his said office he was a member of the election board
of the said ward at the primary election held on August 2,
1901, and as such exercised supervision and control thereof,
and that, prior thereto, the defendant, by the offer and promise
of money endeavored unlawfully and corruptly to influence
Seidel "as a member of the said executive committee to have
the vote of the said ward cast and counted in his favor for the
said office of county chairman and against his rival David
Ruckle at the said election." That, to offer a bribe to a mem-
ber of a county or executive committee of a party, whose duty
as such officer is to conduct a party primary in a particular
district, to have the vote of that district at such election counted
for a particular candidate for office in the organization is
made a misdemeanor by this section, and that this offense is
charged with substantial accuracy in the sixth count of the
indictment cannot be seriously questioned. A member of an
election board who upon the promise of a bribe undertakes to
use his influence as such officer to have the vote of his
district cast and counted for a particular candidate is not in a
condition of mind to perform the duties devolving upon him
"impartially and faithfully," as his oath requires. The pur-
pose of this section is to prevent candidates, as well as others,
from subjecting him to a temptation which may be more potent
than his oath. Nor is there such variance between the indict-
ment and the information, or, indeed, between the indictment
and the evidence given at the preliminary hearing, as shown
by the transcript, as would warrant the quashing of this count
upon the ground that it required the defendant to answer a
charge for which he was not arrested or held to bail. An in-
dictment need not conform precisely with the phraseology of
the information, provided the offense charged is the same in
substance. Of such a case the present chief justice said:
"The fact that the information did not contain as full and
specific a statement of the offense as the indictment did,
furnished no ground for quashing the latter or either count of

it. If there was room for surprise an application for time to meet the graver charge would have been allowed: " Commonwealth v. Carson, 166 Pa. 179. We need not take up further time and space in the discussion of this question, for it was not claimed in the reasons assigned in support of the motion to quash that this count is not supported by the information. When the learned judge said that the indictment contained charges which were not preferred before the committing magistrate he evidently referred to those counts to which this objection was specifically made, and not to the sixth count.

It is urged that even if each of the counts, as a separate indictment, would be good, yet the indictment as a whole was bad because of the joinder therein of several distinct offenses. We cannot assent to this proposition. It is well settled that it cannot be objected in error, or on demurrer or in arrest of judgment that two or more offenses of the same nature on which the same or similar judgment may be given are contained in different counts of the same indictment: Commonwealth v. Gillespie, 7 S. & R. 469; Harman v. Commonwealth, 12 S. & R. 69; Commonwealth v. Sylvester, Brightly's Rep. 331; Henwood v. Commonwealth, 52 Pa. 424; Commonwealth v. Birdsall, 69 Pa. 482; Commonwealth v. Stahl, 1 Pa. Superior Ct. 496. See also Stevick v. Commonwealth, 78 Pa. 460; Hunter v. Commonwealth, 79 Pa. 503; Staeger v. Commonwealth, 103 Pa. 469; Commonwealth v. Rockafellow, 3 Pa. Superior Ct. 588, 596; Commonwealth v. Liebtreu, 1 Pears. 107. As to quashing an indictment for this cause, some of the earlier decisions made a distinction between felonies and misdemeanors. But as all of the offenses which this indictment charges are misdemeanors, we are not required to consider to what extent this distinction is still recognized. It is further to be noticed that the distinct acts charged in the several counts of the indictment were not unrelated in nature, purpose or effect. All of them are alleged to have been committed to influence the same election and to accomplish a single result, namely, the election of the defendant to the office of county chairman. Such being the case, it is clear, both upon reason and upon authority, that the inclusion of these charges in several distinct counts of the same indictment was not such

misjoinder as would make it necessary or proper for the protection of the defendant to quash the indictment: Chitty, Crim. L. 254; 1 Bishop, Crim. Proc. sec. 452; 1 Whart. Crim. L. (7th ed.) sec. 414; Commonwealth v. Gillespie, 7 S. & R. 469, 476.   It is to be observed further, that the court did not quash the indictment upon this ground.

One other objection remains to be noticed.   The information charged the making of offers or promises of bribes to three different electors, naming them, and the making of similar offers and promise to divers electors, whose names were not given. At the hearing before the committing magistrate, as stated in his transcript, no evidence was offered other than that which appertained to two of the electors specifically named, but the transcript does not clearly and unequivocally show that the charge as to the other electors was withdrawn by the prosecutor or dismissed by the magistrate.   The indictment, as we have seen, charges the making of offers or promises of bribes to the two electors last referred to, to one elector specifically mentioned in the information, but as to whom no evidence was given at the preliminary hearing and to another elector who was not specifically mentioned by name in the information. Five months elapsed between the finding of the indictment and the motion to quash, and in the mean time the cause was twice continued.

Strictly speaking the two counts last referred to do not contain charges not preferred before the magistrate, and it would be an unwarranted extension of the rule laid down in Rowand v. Commonwealth, 82 Pa. 405; Commonwealth v. Green, 126 Pa. 531, and kindred cases, to make the sufficiency of the evidence given on the preliminary hearing the test by which to determine the validity of the action of the district attorney in sending the indictment before the grand jury.   But be that as it may, viewing the information as a whole, and giving it a reasonable intendment, and looking also at the transcript, the objection under consideration was, at the utmost, valid as to the seventh, eighth and ninth counts only.

It has been said that if there be one good count, the motion to quash, as a general rule, will not be sustained.   In a case where the court had quashed an indictment containing two counts, the Supreme Court, in reversing the order and reinstat-

ing the indictment, said: "It is unnecessary to express an opinion on the first count of this indictment, as it is clear the second count is good:" Commonwealth v. McKisson, 8 S. & R. 420. But the rule as above stated is not unbending and does not prevent the quashing of the objectionable counts. "In clear cases, a judge may, at his discretion, quash a defective count in an indictment without quashing the entire indictment:" 1 Whart. Crim. L. (7th ed.) sec. 522. It does not follow that because a count is quashed a subsequent count, referring to the day, place, person or property described in the bad count must also be quashed: Commonwealth v. Kaas, 3 Brewst. 422. In Commonwealth v. Bartilson, 85 Pa. 482, where the entire indictment was quashed, the Supreme Court decided that the second count was good and the first count bad and reversed the order so far as it applied to the second count. It is unnecessary to cite other authorities upon this point. The rights of the defendant in this case would have been fully protected by quashing the bad counts, leaving the good count or counts to stand. We think the order should have been so qualified.

The order so far as it relates to the sixth count is reversed, and so far as it relates to the other counts is affirmed, and the record is remitted to the court below with a procedendo.