# Commonwealth *v.* Brown, Appellant.

*Criminal law—Parties—Description of parties—Indictment—School law.*

As the city of Philadelphia is coterminus with the county, and constitutes a single school district, and as each ward of the city constitutes what is called a " school section " for which there is a board of directors, an indictment against three directors is not defective because the defendants are described as " directors of the public schools of the twenty-eighth ward of the city of Philadelphia."

*Criminal law—Conspiracy—Evidence.*

In order to render the offense of conspiracy complete there is no occasion that any act should be done, or that any one should be aggrieved or defrauded in pursuance or in consequence of the unlawful agreement.

*Criminal law—Conspiracy—Indictment—Extortion.*

An indictment charged in apt language a corrupt conspiracy to extort, receive and take money, by color of their offices, from certain persons, naming them, and others whose names were unknown, " as and for fees and rewards, emoluments and pay for obtaining and procuring the election of them   .   .   .   .   to the position of school-teachers " in the public schools of said ward. *Held* that the indictment was not bad because it did not state that the payment was not made voluntarily, or because it did not allege that the money taken was claimed to be as a fee for official services.

An indictment against school directors for conspiracy to commit extortion by taking fees and rewards for procuring the election of persons to the position of school-teacher, the indictment is not bad because it does not contain the words " extort" or " extorsively " as descriptive of the offense, nor is it bad because it does not allege that any money was taken from the persons appointed school-teachers, as a fee for official services.

*Criminal law—Extortion—Common-law offense—School law.*

Extortion is the corrupt demanding or receiving by a person in office of a fee for services which should be rendered gratuitously; or when compensation is permissible of a larger fee than the law justifies or a fee not yet due.

Where an indictment charges a conspiracy to commit a crime, a description of the crime which conforms substantially to the act of assembly prohibiting it, if any such there be, or if a crime at common law, so plainly that the nature of the offense may be easily understood by the jury, it is sufficient.

Even if it be conceded that a school director is not such an officer of the commonwealth as comes within the provisions of the act of March 31, 1860, section 12, it does not follow that he is not indictable for common-law extortion, much less that when two or more school directors confederate

to exact pay from school-teachers in return for their appointment they cannot be convicted of conspiracy.

*Criminal law—Bribery—School directors.*

Assuming that the act of a school director in corruptly accepting money as pay for his vote or influence in the appointment of teachers, is not technically speaking bribery, still for such an act he may be indicted at common law. The modern definitions of bribery clearly include as subjects of it, all persons whose official conduct is in any way connected with the administration of the government. It is not confined merely to judges, or other persons concerned in the administration of justice.

*Criminal law—Conspiracy at common law.*

A conspiracy at common law is a much broader offense than that defined in section 128 of the Penal Code of 1860, and that section does not, nor was it intended to interfere with the indictment and punishment of a common-law conspiracy.

Where the act is lawful for the individual, it can be the subject of conspiracy when done in concert, only where there is a direct intention that injury shall result from it, or where the object is to benefit the conspirators to the prejudice of the public or the oppression of individuals, and where such prejudice or oppression is the natural and necessary consequence.

For a school director to exact from an applicant for appointment as teacher pecuniary reward for the performance of his official duty in that regard, or to accept money or thing of value in corrupt payment for giving his vote or influence for the appointment of such applicant, is an immoral, illegal and corrupt act, obviously harmful to the public interests, and, if the money is extorted by color of his office, prejudicial to the person from whom it is exacted and received. Even if such an act is not in itself indictable at common law or under the statute, still a combination and confederation amongst school directors to commit such an act is indictable.

*Criminal law—Indictment—Presentation by district attorney—Control of court.*

The district attorney may prefer a bill of indictment without a previous binding over or commitment of the accused, but the exercise of this extraordinary power is always subject to the supervisory control of the court.

Where the court sanctions and approves it, and a motion to quash is refused, the appellate court will not reverse unless there be an abuse of discretion both manifest and flagrant.

The objection that the record does not show a motion in open court and leave granted prior to the presentation of the bill is not necessarily fatal on appeal.

*Criminal law—Indictment—Motion to quash—Presentation by district attorney.*

Where an indictment is sent up by the district attorney without first obtaining the leave of the court, the discretion of the court may be invoked,

and is exercisable on motion to quash. If the court refuses to quash this, ordinarily it is equivalent to giving its sanction. If the court sustains the motion to quash, this is tantamount to refusing its approval of the action of the district attorney.

*Criminal law—Signing bill—District attorney.*

The court commits no error in refusing to quash an indictment because the signature of the district attorney was not written with his own hand, where it appears that the signature was affixed by the express direction of the district attorney, who in person laid the bill thus signed before the grand jury, and by other unequivocal acts avowed his individual and official responsibility therefor.

"At the same time we are not to be understood as commending the practice, much less as holding that the duty of signing bills of indictment, imposed upon district attorney by the Act of May 3, 1850, P. L. 654, may be effectually performed by a clerk, or even a deputy, under a general authorization by the district attorney to sign his name." Per RICE, P. J.

*Jury—Challenge—Peremptory challenge—Practice, Q. S.*

The right of peremptory challenge is not of itself a right to select, but a right to reject.

When a juror has been called and sworn upon his voir dire, and after being examined and cross-examined has been found not to be subject to challenge for cause, the peremptory challenge should be made, if it is to be made at all, before another juror is called and examined as to his qualifications. The practice is regulated by the Act of March 16, 1901, P. L. 16, as amended by the Act of July 9, 1901, P. L. 629.

In the absence of a statute on the subject the order in which peremptory challenges shall be exercised is in the discretion of the court. It is not improper for the court to direct that the commonwealth and the defendant should alternate, but that a failure to challenge by either party should not be considered a waiver of one of the number of challenges allowed by law.

*Evidence—Character—General reputation—Witness.*

It is not competent to rebut the evidence introduced by a prisoner to show his good character by evidence of specific criminal acts, as for example that he was the instigator of an unlawful attempt to influence a juror called in the case.

Evidence which of itself, or taken in connection with other evidence in the case or offered to be introduced, would warrant a jury in finding that a party has corruptly influenced or attempted to corrupt and influence a juror who has been or might have been impanelled in his case is competent as tending to show that the party guilty of the misconduct is unwilling to rely on the truth of his cause. The rule applies with equal force in criminal as well as in civil cases.

*Evidence—Relevancy—Proof in another proceeding.*

Where the relevancy of an offer of evidence depends upon other facts not in evidence it should be accompanied by an offer to prove those facts.

It is not sufficient if they have been proved in another proceeding, and are known to the judge and the opposite party.

### Evidence—Witness—Declarations.

Where in the trial of a criminal cause, the prisoner not only denies the statement of a witness for the commonwealth, but endeavors to show that the witness had a motive or was under an outside influence in giving his testimony which tended to discredit him, the commonwealth may show previous statements of the witness consonant with the testimony given by him at the trial, which statements were made at a time when the imputed motive did not exist, or when motives of interest would have enduced him to make a different statement of facts.

### Criminal law—Conspiracy—Charge.

On the trial of an indictment for conspiracy it is not error to charge that the jury cannot acquit three defendants and convict one, where there is no evidence that any other person than those named in the indictment was in the conspiracy.

Argued May 19, 1903. Appeal, Nos. 77, 78, 79 and 80, Oct. Term, 1903, by defendants, from judgment of Q. S. Phila. Co., June T., 1902, Nos. 402, 405–425, on verdict of guilty in case of Commonwealth v. B. Frank Brown, Joseph Travis, Thomas F. G. Seixas and David D. Johnson. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Indictment for conspiracy. Before DAVIS, J.

The indictment was as follows:

That heretofore, to wit: on the nineteenth of April, in the year of our Lord, 1902, B. Frank Brown, Joseph Travis, Thomas F. G. Seixas, Albert W. Weider, and William H. Sivel, were directors of the public schools of the twenty-eighth ward of the city of Philadelphia, having been duly elected to said office, and having duly qualified and assumed the discharge of the powers and duties of the said office; and that in the conduct and discharge of said offices of directors of public schools of said twenty-eighth ward, it became and was their duty, without pay or emolument whatsoever for their services in so doing, in conjunction with the other directors of public schools comprising the said board of directors of public schools of said twenty-eighth ward to appoint and elect persons to the positions of school-teachers in the public schools of the said twenty-eighth ward of the city of Philadelphia aforesaid. And that

on the day and year aforesaid, one David D. Johnson was a resident of the said twenty-eighth ward of the city of Philadelphia aforesaid.

That the said B. Frank Brown, late of the said county, yeoman; Joseph Travis, late of the said county, yeoman; Thomas F. G. Seixas, late of the said county, yeoman; Albert W. Weider, late of the said county, yeoman; William H. Sivel, late of the said county, yeoman; so then and there being such duly elected and qualified directors of public schools in the said twenty-eighth ward of the city of Philadelphia and members of the said board of directors of public schools of said twenty-eighth ward as aforesaid, and

David D. Johnson, late of the said county, yeoman; together with divers other evil-disposed persons whose names are to this grand inquest as yet unknown, on the said nineteenth day of April, in the year of our Lord, 1902, at the county aforesaid, and within the jurisdiction of this court, unlawfully, wickedly, and corruptly contriving and intending to extort, receive, and take from one Alice J. Orrell, one Etta C. Hannis, one Rene A. Haydock, one Alice J. Kilpatrick, one Abel J. Evans, and divers other persons whose names are to this grand inquest as yet unknown, divers large sums of money for their own use, did then and there unlawfully, wilfully, wickedly, and corruptly combine, confederate, conspire, and agree together, between, and amongst themselves, by divers unlawful, wilful, wicked, and corrupt means, devices, and contrivances, and by color of the offices of them, the said B. Frank Brown, Joseph Travis, Thomas F. G. Seixas, Albert W. Weider, and William H. Sivel, as such directors of public schools aforesaid, to unlawfully, wilfully, extorsively, wickedly, and corruptly extort, receive, and take of and from them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet unknown as aforesaid, divers large sums of money, to wit: lawful moneys of the United States, of the values of $30.00 and upwards, of the moneys and property of them, the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet unknown as aforesaid, as and for fees and rewards,

emoluments, and pay for obtaining and procuring the election and appointment of them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet unknown to the position of school-teachers in, of, and for the public schools of the twenty-eighth ward of the city of Philadelphia aforesaid; whereas, in truth and in fact no fees, rewards, emoluments, and pay whatsoever were due to them the said B. Frank Brown, Joseph Travis, Thomas F. G. Seixas, Albert W. Weider, and William H. Sivel, as such directors of public schools aforesaid from them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet unknown as aforesaid in that behalf, to the prejudice and great damage of them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet unknown as aforesaid, against the peace and dignity of the commonwealth of Pennsylvania.

That the said B. Frank Brown, late of the said county, yeoman; Joseph Travis, late of the said county, yeoman; Thomas F. G. Seixas, late of the said county, yeoman; Albert W. Weider, late of the said county, yeoman; William H. Sivel, late of the said county, yeoman; so then and there being officers of the said commonwealth, to wit: duly elected and qualified directors of public schools in the said twenth-eighth ward of the city of Philadelphia and members of the said board of directors of public schools in the said ward, and

David D. Johnson, late of the said county, yeoman, together with divers other evil-disposed persons whose names are to this grand inquest as yet unknown, on the said nineteenth day of April, in the year of our Lord 1902, at the county aforesaid and within the jurisdiction of this court, did then and there unlawfully, wilfully and fraudulently combine, confederate, conspire, and agree together, between, and amongst themselves, by divers unlawful, wilful, and fraudulent means, devices, and contrivances then and there unlawfully, wilfully, and fraudulently to receive and take, by color of the offices of them the said B. Frank Brown, Joseph Travis, Thomas F. G.

Seixas, Albert W. Weider, and William H. Sivel, as such officers of the commonwealth aforesaid, from Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and divers other persons whose names are to this grand inquest as yet unknown, divers fees and rewards not allowed by some act of assembly of the said commonwealth, to wit: divers large sums of money, lawful moneys of the United States, of the value of $30.00 and upwards of the moneys and property of them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet unknown as aforesaid, to the prejudice and great damage of them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet unknown as aforesaid, contrary to the form of the act of the general assembly in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania.

That the said B. Frank Brown, late of the said county, yeoman; Joseph Travis, late of the said county, yeoman; Thomas F. G. Seixas, late of the said county, yeoman; Albert W. Weider, late of said county, yeoman; William H. Sivel, late of the said county, yeoman; then and there being officers of the said commonwealth, to wit: duly elected and qualified directors of public schools in the said twenty-eighth ward of the city of Philadelphia aforesaid, and members of the said board of directors of public schools in said ward, and

David D. Johnson, late of the said county, yeoman; together with divers other evil-disposed persons whose names are to this grand inquest as yet unknown, on the said nineteenth day of April, in the year of our Lord 1902, at the county aforesaid and within the jurisdiction of this court, did then and there unlawfully, wilfully, and fraudulently combine, confederate, conspire, and agree together, between, and amongst themselves by divers unlawful, wilful, and fraudulent means, devices, and contrivances then and there, directly and indidirectly, to unlawfully, wilfully, and fraudulently accept and receive and agree to accept and receive from one Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and divers other persons whose names

are to this grand inquest as yet unknown, divers moneys, goods, and bribes, to wit: divers large sums of money, lawful money of the United States of the values of $30.00 and upwards, of the moneys and property of them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet unknown, to obtain and influence them the said B. Frank Brown, Joseph Travis, Thomas F. G. Seixas, Albert W. Weider, and William H. Sivel, as such officers, directors of public schools, and members of said board of directors of public schools of said twenty-eighth ward, in their votes and behavior in the matter and thing of the appointment and election of them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet unknown as aforesaid, to the positions of school-teachers in the public schools in said twenty-eighth ward, the said appointments and elections of them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the divers others persons whose names are to this grand inquest as yet unknown as aforesaid, to said positions of school-teachers in said ward, being depending before the said board of school directors of the said twenty-eighth ward of the city of Philadelphia aforesaid, to the prejudice and great damage of them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers others persons whose names are to this grand inquest as yet unknown, contrary to the form of the act of the general assembly in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania.

That the said B. Frank Brown, late of the said county, yeoman; Joseph Travis, late of the said county, yeoman; Thomas F. G. Seixas, late of the said county, yeoman; Albert W. Weider, late of the said county, yeoman; William H. Sivel, late of the said county, yeoman; then and there being such duly elected and qualified directors of public schools in the said twenty-eighth ward of the city of Philadelphia and members of the said board of directors of public schools in said ward, and

David D. Johnson, late of the said county, yeoman ; together with divers other evil-disposed persons whose names are to this grand inquest as yet unknown, on the said nineteenth day of April in the year of our Lord 1902, at the county aforesaid and within the jurisdiction of this court, then and there unlawfully, knowingly, wilfully, wickedly, corruptly, and dishonestly contriving and intending to seek and procure for themselves undue rewards, remunerations and prices, in and for the exercise by them the said B. Frank Brown, Joseph Travis, Thomas F. G. Seixas, Albert Weider, and William H. Sivel, of the duties of their said offices of directors of public schools in said twenty-eighth ward, did then and there unlawfully, knowingly, wilfully, wickedly, corruptly, and dishonestly combine, confederate, conspire and agree together, between, and amongst themselves, by divers unlawful, wilful, wicked, dishonest, and corrupt means, devices, and contrivances, unlawfully, wilfully, wickedly, corruptly, and dishonestly to receive and accept and offer to receive and accept from Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and divers other persons whose names are to this grand inquest as yet unknown, divers large sums of money, to wit: lawful moneys of the United States of the values of $30.00 and upwards, as undue rewards, remunerations, prices, and bribes for their official actions as such directors of public schools aforesaid in the elections and appointments of persons to the positions of school-teachers as aforesaid, and with the view and intent that the same should and would influence the behavior of them the said B. Frank Brown, Joseph Travis, Thomas F. G. Seixas, Albert W. Weider, and Thomas Sivel, in the discharge of their duties as such directors of public schools aforesaid in the elections and appointments of them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet unknown as aforesaid, to the positions of school-teachers in the public schools in the said twenty-eighth ward of the city of Philadelphia aforesaid, to the prejudice and great damage of them the said Alice J. Orrell, Etta C. Hannis, Rene A. Haydock, Alice J. Kilpatrick, Abel J. Evans, and the said divers other persons whose names are to this grand inquest as yet un-

known, against the peace and dignity of the commonwealth of Pennsylvania. JOHN WEAVER,

District Attorney.

The defendants demurred to the indictment filing the following reasons for demurrer :

1. Because there is no officer known to the law as described in the first count of the said indictment in the language, " directors of the public schools of the twenty-eighth ward of the city of Philadelphia."

2. Because the said first count does not charge any indictable offense against the laws of Pennsylvania.

3. Because the said first count does not charge any indictable offense against the common law.

4. Because the means by which the alleged conspiracy was to be effected are not set forth in the said first count as required by law.

5. Because the end of the conspiracy charged in the said first count being to secure the election of certain individuals as teachers, and being lawful, the means whereby the alleged conspiracy was to be effected must be set forth.

6. Because the said first count is vague, uncertain, argumentative, and otherwise defective.

7. Because there is no officer known to the law as described in the second count of the said indictment in the language, " directors of the public schools of the twenty-eighth ward of the city of Philadelphia."

8. Because the said second count does not charge any indictable offense against the laws of Pennsylvania.

9. Because the said second count does not charge any indictable offense against the common law.

10. Because the means by which the alleged conspiracy was to be effected are not set forth in the said second count as required by law.

11. Because the end of the conspiracy charged in the second count being to secure the election of certain individuals as teachers, and being lawful, the means whereby the alleged conspiracy was to be effected must be set forth.

12. Because the said second count is vague, uncertain, argumentative, and otherwise defective.

13. Because there is no officer known to the law as described in the third count of the said indictment in the language, "directors of the public schools of the twenty-eighth ward of the city of Philadelphia."

14. Because the said third count does not charge any indictable offense against the laws of Pennsylvania.

15. Because the said third count does not charge any indictable offense against the common law. ˙

16. Because the means by which the alleged conspiracy was to be effected are not set forth in the said third count, as required by law.

17. Because the end of the conspiracy charged in the said third count being to secure the election of certain individuals as teachers, and being lawful, the means whereby the alleged conspiracy was to be effected must be set forth.

18. Because the said third count is vague, uncertain, argumentative, and otherwise defective.

19. Because there is no officer known to the law as described in the fourth count of the said indictment in the language, "directors of the public schools of the twenty-eighth ward of the city of Philadelphia."

20. Because the said fourth count does not charge any indictable offense against the laws of Pennsylvania.

21. Because the said fourth count does not charge any indictable offense against the common law.

22. Because the means by which the alleged conspiracy was to be effected are not set forth in the said fourth count, as required by law.

23. Because the end of the conspiracy charged in the said fourth count being to secure the election of certain individuals as teachers, and being lawful, the means whereby the alleged conspiracy was to be effected must be set forth.

24. Because the said fourth count is vague, uncertain, argumentative, and otherwise defective.

On motion to quash, the following reasons were stated:

1. Because there was no preliminary accusation or hearing before a committing magistrate.

2. Because there was no presentment by the grand jury made from personal knowledge or from the testimony of witnesses sent before them by the court.

3. Because the offenses charged are not of such a nature as to require the extraordinary intervention of the court in directing the grand jury to proceed to their investigation, or of the district attorney in sending the bills before the grand jury without the previous prosecution or binding over before a magistrate.

4. Because the indictment shows that it was found by the grand jury upon mere motion of the district attorney without previous hearing and commitment or binding over of defendants, and without showing that the said defendants were fugitives from justice or could not be found, or that some great public necessity or emergency required that it should be so found.

5. Because the defendants are deprived of their constitutional rights, in having no opportunity to demand the nature and cause of the accusation against them, to meet the witnesses face to face, to be heard by them or their counsel, and they are deprived of their liberty by other than the law of the land.

At the calling of the jury Mr. Shields states to the juror (Robert Shronk, No. 48), that he may take a seat in the jury box.

Mr. Weaver: Do I understand you have no challenge, Mr. Shields?

Mr. Shields: I have not said a word, but will exercise my right at the proper time; I haven't overlooked it.

Mr. Weaver: The commonwealth withdraws its challenge, but I insist now that the defendant exercise his right to challenge or not.

Mr. Shields: The law says I shall exercise my right when he is called to the book. He is not now called to the book. I propose to exercise my right of challenge when I am within the law, and I decline to be compelled to exercise that right now.

Mr. Weaver: Under the McCarrell act, which we have had interpreted in this court a number of times during the last two years, it has been construed when the man is called the time his name is taken out of the box.

Judge Davis: That is the ruling of the court; challenges will be made at the time the man is called now, and if Mr. Shields waives his challenge by seating the juror that is his loss.

Mr. Weaver: I ask your honor to ask Mr. Shields if he desires to challenge this juror.

Judge Davis : The ruling of this court is, if Mr. Shields does not challenge now, he waives his challenge, and, having waived it, he is bound by it.

Exception for defendants.

This juror is seated in the jury box.

Also in the following ruling in the case of James Batten, jurer No. 3.

Mr. Shields : The case having been called for trial, the name of James Batten was called as a juror, whereupon the court decided and determined that the defendants must exercise their right of challenge when the juror was thus called, before he was actually called to the book to be sworn, after he had been sworn upon his voir dire and after the district attorney had withdrawn his challenge.

Judge Davis : This very question has been decided in various ways by different judges, but my ruling is as I have already stated it. The juror has been called, sworn upon his voir dire, examined, cross-examined and the commonwealth has waived its challenge, no reason appearing why the juror should be challenged for cause, the challenge should come before the juror takes his seat in the jury box.

Mr. Shields : Whereupon the defendants ask for an exception.

Judge Davis : The exception is granted. [18]

Mr. Shields : Whereupon the juror is challenged peremptorily.

This juror being challenged peremptorily by the defense takes a seat back in the court room.

Also in his ruling in the case of Alexander Cunningham, juror No. 10.

The following offer was made :

The district attorney : In order to save time I will tell you what I propose to prove. I propose to prove by this witness that Mr. Herbert Simpler, for whom a bench warrant has been issued by your honor for attempted embracery for a member of this panel of jurors, the jurors empaneled in this court for this present session, said Herbert Simpler being the same person who was with one of the defendants, Travis, on Tuesday evening for a considerable length of time, both at his house, on a street car, and on the streets of the city of Philadelphia, in an

effort to get bail for that attempted embracery charge. All of which occurred after Travis, the defendant, knew that Simpler was charged with attempted embracery in this case. Thus connecting Mr. Simpler, Mr. Bodenstein, and Mr. Ihrig, a juror, who was approached; and the testimony is now before the court, and therefore showing that Travis does not bear the character that the witnesses for character showed.

Mr. Shields objected to the offer. Objection overruled. Exception for defense. [20]

The district attorney : I would like to add to my offer that the evidence tends to show—

Mr. Shields : I object to " tends to show, " because that is argumentative.

The district attorney : Such testimony tending to prove that the ground of defense relied upon by the defendants is false and dishonest.

Mr. Shields : On behalf of the defendants I ask that that may be stricken from the records, because it is offensive to the precincts in which it is uttered.

The Court : I will strike from the offer the words "tends to prove" and insert " for the purpose of proving."

Mr. Shields objected to the offer. Objection overruled. Exception for defense.

The district attorney : " Q. Did Mr. Simpler see you at all in regard to the case known as the school directors' case? A. Yes, sir. Q. When ? A. Sunday evening; last Sunday evening. Q. What did Mr. Simpler say to you ? Objected to unless some one of the defendants was present.

The district attorney : How was it possible for us to show that one of the defendants was there, nor is it necessary under the rules of evidence to show that one of the defendants was there. We have shown that Simpler was charged with the offense ; that he was on the street car and in the streets with one of the defendants when he knew that charge was pending against Simpler. Now, I propose to show what Simpler only forty-eight hours before had stated to this gentleman on the stand in regard to this case.

Mr. Shields : The mere fact that he was on the car or that he was attempting to get bail for a friend is not an offense.

The district attorney: That to be followed up by showing that Mr. Simpler disappeared immediately after he was seen with this man, and has not since been seen in Philadelphia and is now a fugitive from justice.

Mr. Shields: That cannot be evidence in this case.

· The Court: If this was testimony affecting the charge against the defendants, then under the authorities I would be compelled to admit it as I did other evidence a short time ago, but this is conversation upon an entirely different matter, not connected with the conspiracy itself, and I cannot admit any testimony except in the presence of one of the defendants.

Mr. Shields: " Q. Did you ever see Mr. Seixas? "

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were (1–12) in overruling demurrer; (13, 14) refusing motion to quash; (15–17, 20–24) rulings on evidence, quoting the bill of exceptions; (18, 19) rulings as to challenges; (25–27) various instructions, quoting them.

*A. S. L. Shields* and *W. W. Porter*, with them *Monaghan & Phillips*, for appellant.—There is no officer known to the law as described in the counts of the said indictment in the language, " directors of the public schools of the twenty-eighth ward of the city of Philadelphia: " Act of March 3, 1818, sec. 1, 7 Sm. L. 53 ; Act of February 2, 1854, sec. 21, P. L. 21. ·

The first count, which charges extortion as the illegal object, is insufficient, (1) because it does not state that the payment was not made voluntarily, and (2) because it does not allege that the money taken was claimed to be due as a fee for official services, but sets forth facts showing that it was for other than official services: Loftus v. State, 19 Atl. Repr. 183 ; State v. Oden, 10 Ind. App. 136 ; State v. Moore, 1 Ind. 548 ; Com. v. Ache, 2 North. 370.

The second count, the alleged object of which is extortion is insufficient, (1) because it does not contain the words " extort " or " extorsive " as descriptive of the offense ; (2) because it does not aver that the payment was not made voluntarily, and (3) because it does not allege that the money taken was claimed to be due as a fee for official services, but sets forth

facts showing that it was for other than official services : Loftus
v. State, 19 Atl. Repr. 183.

The third and fourth counts charge a conspiracy to bribe.
A director of a school district is not included in the designa-
tion of the persons who may be bribed : Section 18 of the Act
of May 8, 1854, P. L. 617 ; Com. v. Silliman, 8 Lacka. Legal
News, 9 ; Com. v. Neely, 3 Pitts. 527.

Nor is a member of a school district corporation indictable
for bribery at common law : 2 Wharton's Criminal Law, p. 589.

The record is insufficient to overcome the presumption of
the defendant's innocence, (1) because it does not show affirma-
tively that it was presented to the grand jury with the sanction
of the court ; (2) because there were no facts of record to
justify the court in giving its sanction ; and (3) because the
court's sanction was not obtained by motion in open court :
4 P. & L. Dig. of Decisions, 5795, citing Com. v. Jadwin,
1 C. P. Rep. 133 ; Com. v. Moister, 3 Pa. C. C. Rep. 539 ;
Com. v. Ream, 7 Lanc. L. R. 187 ; Com. v. Hughes, 1 Pa.
Dist. Rep. 596 ; Com. v. Pfaff, 17 Pa. C. C. Rep. 302 ; Com.
v. Lowry, 2 Luz. L. Obs. 409 ; Com. v. Kohle, 2 Kulp, 329 ;
Rowand v. Com., 82 Pa. 405 ; Com. v. Sheppard, 20 Pa. Superior
Ct. 417 ; Com. v. Green, 126 Pa. 531 ; Com. v. McComb, 157
Pa. 611 ; In re Citizens' Assn., 8 Phila. 478 ; Adams v. State,
11 Ind. 304 ; Com. v. Dieffenbaugh, 3 Pa. C. C. 299 ; Com. v.
Hunter, 13 Pa. C. C. Rep. 573 ; Com. v. Simons, 6 Phila.
167.

The bills of indictment are not signed by the district at-
torney or earmarked in any way by him.   An indictment clerk
signed the district attorney's name to them ; State v. Sheppard,
97 No. Car. 401 ; Com. v. Wilson, 36 Pitts. L. J. 332 ; Penna.
R. R. Co. v. Heister, 8 Pa. 445 ; McMullen v. Orr, 8 Phila.
342.

The learned trial judge erred in admitting evidence as fol-
lows : The prosecutors as witnesses for the commonwealth testi-
fied in chief to conversations with the defendants occurring
when the alleged bribes were offered.   The defendants took
the stand and denied receiving the alleged bribes or that such
conversations had occurred.   The commonwealth offered in
rebuttal certain witnesses who were permitted to relate certain
declarations or statements made to them by the prosecutors

prior to the trial, and in the absence of the defendants, and these witnesses testified that such statements were the same in substance as the prosecutors' testimony at the trial: Com. v. Kay, 14 Pa. Superior Ct. 376 ; Leitz v. Hohman, 16 Pa. Superior Ct. 276 ; Sinsheimer v. Hartman, 19 Pa. Superior Ct. 494 ; Clever v. Hilberry, 116 Pa. 431 ; Thomas v. Miller, 165 Pa. 216.

Whether the McCarrell act and its amendment requires that the right to challenge must be exercised or waived immediately after the voir dire examination of a juror, as may be exercised at any time up to the moment the expaneled jury is sworn.

The right of the accused to challenge peremptorily may be reserved until after he has made all his challenges for cause: Hooker v. State, 4 Ohio, 348 ; Hunter v. Parsons, 22 Mich. 96 ; People v. Scoggins, 37 Cal. 676 ; People v. Jenks, 24 Cal. 11 ; People v. Edwards, 101 Cal. 543 (36 Pac. Repr. 7) ; Silcox v. Lang, 78 Cal. 118 (20 Pac. Repr. 297) ; People v. Ah You, 47 Cal. 121 ; Cruce v. State, 59 Ga. 83 ; People v. Carpenter, 36 Hun (N. Y.), 315 ; Rutherford v. State, 32 Neb. 714 (49 N. W. Repr. 701) ; Mann v. State, 23 Fla. 610 (3 So. Repr. 207) ; Schumacher v. Wisconsin, 5 Wis. 324.

*Robert Von Moschzisker*, assistant district attorney, and *John C. Bell*, district attorney, for appellee.—It is not necessary for the district attorney to physically sign bills of indictment, and if necessary he can do so subsequent to the finding thereof: Com. v. Green, 126 Pa. 535.

No particular record is necessary to support a district attorney's bill,—earmarking of bill is sufficient: Com. v. Wilson, 36 Pittsburg Law Journal, 332 ; Brown v. Com.; 86 Va. 466 (10 S. E. Repr. 745) ; State v. Reed, 67 Me. 127 ; State v. Ruby, 61 Iowa, 86 (15 N. W. Repr. 848) ; State v. Wilmoth, 63 Iowa, 380 (19 N. W. Repr. 249) ; Hamilton v. State, 103 Ind. 96 (2 N. E. Repr. 299) ; Miller v. State, 35 S. W. Repr. 391 ; Currey v. State, 7 Baxt. (Tenn.) 154 ; Riflemaker v. State, 25 Ohio St. 395.

The district attorney cannot only present bills for misdemeanor in office as allowed by the constitution, but he may present, by leave of court, without previous hearing, in all

offenses which are against the community rather than against the individual, and which tend to debauch and corrupt public morals : In re Grand Jury, 4 North. 374 ; Com. v. Hurd, 177 Pa. 481 ; McCollough v. Com., 67 Pa. 30 ; Com. v. Lowry, 2 Luzerne Leg. Obs. 409 ; Com. v. Dietrich, 7 Pa. Superior Ct. 515.

The indictment charges an indictable offense : Com. v. McHale, 97 Pa. 397 ; Com. v. Randolph, 146 Pa. 83 ; State v. Jackson, 73 Me. 91 ; Walsh v. State, 65 Ill. 58 ; State v. Ellis, 33 N. J. Law Rep. 102.

At common law extortion was a high misdemeanor and embraced a wider scope than our statutory extortion. Extortion at common law was an officer's unlawfully taking, by color of his office, from any man, any money or thing of value that is not due to him or is more than is due, or before it is due : 1 Russell on Crimes (9th ed.), *208 ; 4 Blackstone's Com. 141 ; Com. v. Mitchell, 96 American Dec. 194 ; Com. v. Irwin, 8 Phila. 380 ; State v. Oden, 10 Ind. App. 136 ; Rex v. Higgins, 4 Carrington & Payne, 247 ; Com. v. Bartilson, 85 Pa. 482 ; Com. v. McKisson, 8 S. & R. 420 ; Twitchell v. Com., 9 Pa. 211 ; Mifflin v. Com., 5 W. & S. 461 ; Hazen v. Com., 23 Pa. 355 ; Heine v. Com., 91 Pa. 145 ; Com. v. McHale, 97 Pa. 397.

The rulings on the challenges were correct : Act of July 9, 1901, P. L. 629 ; Hartzell v. Com., 40 Pa. 462 ; Com. v. Marrow, 3 Brewster, 402 ; State v. Armington, 25 Minn. 29.

The consonant statements were admissible under the circumstances : State v. Parish, 79 No. Car. 610 ; Com. v. Kay, 14 Pa. Superior Ct. 376 ; Foster v. Shaw, 7 S. & R. 156 ; Henderson v. Jones, 10 S. & R. 322 ; Craig v. Craig, 5 Rawle, 91 ; Good v. Good, 7 Watts, 195 ; Hester v. Com., 85 Pa. 139.

OPINION BY RICE, P. J., October 5, 1903 :

The appellants were jointly indicted, tried and convicted. They took separate appeals, but presented them upon the argument as if they had appealed jointly. This was proper, as the questions raised upon the several appeals are the same.

The indictment charged that three of the defendants, Brown, Travis and Seixas were " directors of the public schools of the twenty-eighth ward of the city of Philadelphia " and that in

the conduct and discharge of said offices it was their duty, without pay or emolument for their services in so doing, in conjunction with the other "directors of public schools comprising the said board of directors of public schools of said twenty-eighth ward," to appoint and elect persons to the positions of school-teachers in the public schools of said ward.

The first count of the indictment charged in apt language a corrupt conspiracy to extort, receive and take money, by color of their offices, from certain persons, naming them, and others whose names were unknown, " as and for fees and rewards, emoluments and pay for obtaining and procuring the election of them . . . . to the position of school-teachers " in the public schools of said ward.

The second count charged a conspiracy, " by divers unlawful, wilful and fraudulent means, devices and contrivances, to receive and take by color of the offices of them . . . . as such officers of the commonwealth aforesaid," from the persons named in the first count, and others whose names were to the jurors unknown, " divers fees and rewards not allowed by some act of assembly," etc.

The third count charged a conspiracy to accept and receive bribes to influence said directors in their votes and behavior in the matter of the appointment and election of the persons named in the first count, and others whose names were unknown, to the positions of school-teachers, which was then depending before the board.

The fourth count charged that the defendants, corruptly and dishonestly contriving and intending to seek and procure for themselves undue rewards, remunerations and prices in and for the exercise by said directors of the duties of their offices corruptly and dishonestly conspired to receive and accept, and offer to receive and accept, money as bribes for their official action in the matter above stated, and with the view and intent that the same would influence the behavior of the directors in that matter.

As more briefly stated by counsel for the commonwealth, the first count charged a conspiracy to commit common-law extortion; the second, a conspiracy to commit statutory extortion; the third, a conspiracy to commit statutory bribery by accepting and agreeing to accept money as bribes to obtain

and influence the action of said school directors ; the fourth, a conspiracy to commit common-law bribery, as before stated.

1. It was assigned as one of the causes of demurrer that there are no such officers known to the law as, "directors of the public schools of the twenty-eighth ward of the city of Philadelphia." The description of the three defendants, Brown, Travis and Seixas, as "directors of the public schools," is not criticised by appellants' counsel, and could not be, since that is the designation given in the legislation called to our attention. See sections 20 and 48 of the Act of February 2, 1854, P. L. 21. The criticism is, that the words "school section" should have been substituted for the word "ward," and the words, "first school district of the state of Pennsylvania" for the words "city of Philadelphia." It was important to allege that the defendants, or some of them, were directors of the public schools of one of the subdivisions of the commonwealth established by the school laws, for which a board of directors is elected or appointed, and to so describe the subdivision as to distinguish it from all others of like kind. The city of Philadelphia is coterminous with the county and constitutes a single school district, and each ward of the city constitutes what is called a "school section" for which there is a board of directors. In the connection in which the words "ward" and "city of Philadelphia" are used in this indictment they as clearly describe, and as perfectly distinguish from all others, the subdivision of the state in which the defendants were exercising the functions of directors of the public schools as the words suggested by the appellants' counsel or any others that can be suggested. The description, if not technically accurate, was substantially so, and was sufficient for every purpose involved in the case.

2. It is contended that the first count is bad, and the demurrer thereto should have been sustained, because, first, it does not state that the payment was not made voluntarily, and second, it does not allege that the money taken was claimed to be due as a fee for official services, but sets forth facts showing that it was for other than official services. The same objections are urged against the second count, with the additional one, that it does not contain the words "extort" or "extorsively" as descriptive of the offense. But the gravamen of the offense charged

is not extortion but the conspiracy to commit extortion by color of the offices of the said directors; and we cannot see that the averment, in the first count, that the money was to be exacted as "pay for obtaining and procuring the election and appointment of the persons named and others unknown to the positions of school-teachers" negatives the previous averment that the unlawful thing was to be done by color of the offices of the directors. It might do so, if the directors, whose duty it was, without pay, to appoint teachers, were not in the conspiracy. Looking at the count as a whole it does not bear the construction contended for by appellants' counsel. Nor was it necessary to allege that any money was claimed or taken from the persons appointed, or the candidates for appointment to the positions of school-teachers, as a fee for official services. Hence, it is not a valid objection that the indictment does not state that the payment was not made voluntarily. In conspiracy the confederating is the gist of the offense, and as no overt act is necessary to complete it, none need be laid: Commonwealth v. McKisson, 8 S. & R. 420; Collins v. Commonwealth, 3 S. & R. 220; Clary v. Commonwealth, 4 Pa. 210; Commonwealth v. Bartilson, 85 Pa. 482; Wilson v. Commonwealth, 96 Pa. 56. "It has been repeatedly ruled that in order to render the offense complete, there is no occasion that any act should be done, or that any one should be aggrieved or defrauded in pursuance, or in consequence of the unlawful agreement:" GORDON, J., in Heine v. Commonwealth, 91 Pa. 145.

3. Assuming, for a moment, that it was necessary to allege sufficient to show that if the conspiracy had been carried into execution the act would have been extortion at common law or under our statute, we are not convinced that the indictment is defective in that regard. To extort in the ordinary meaning of the word, is to obtain by violence, threats, compulsion or the subjection of another to some necessity; but at common law, as well as under our statute, the offense denominated extortion does not necessarily involve actual duress of that sort. Blackstone defines it to be "an abuse of public justice which consists in any officer's unlawfully taking, by color of his office, from any man, any money or thing of value that is not due to him, or more than is due, or before

it is due : " 4 Blackstone's Com. 141. " It is the corrupt demanding or receiving by a person in office, of a fee for services which should be rendered gratuitously ; or when compensation is permissible, of a larger fee than the law justifies, or a fee not yet due : " 2 Bish. Crim. Law sec. 390. Under our statute the criminality consists in the wilfully and fraudulently receiving and taking of the reward or fee as aforesaid by color of his office. Where an indictment charges a conspiracy to commit a crime, a description of the crime which conforms substantially to the act of assembly prohibiting it, if any such there be, or if a crime at common law, so plainly that the nature of the offense may be easily understood by the jury, it is sufficient. Applying this test, the description of the offense alleged in the second count as the object of the conspiracy is sufficient, although neither the word " extort," nor the word " extorsively " appears therein.

4. Even if it be conceded that a school director is not such an officer of the commonwealth as comes within the provisions of the act of March 31, 1860, section 12, it does not follow that he is not indictable for common-law extortion, much less that when two or more school directors confederate to exact pay from school-teachers in return for their appointment they cannot be convicted of conspiracy under an indictment drawn in the language of the first two counts. Speaking of the common-law offense of extortion, Chief Justice PAXSON said : " In general it may be said that any officer, whether he be a federal, state, municipal, or a judicial officer, and that every person occupying an official position may be guilty of the offense : " Commonwealth v. Saulsbury, 152 Pa. 554. In White v. State, 56 Ga. 385, 389, the court said : " It is not, however, absolutely requisite that the element of costs should be in contemplation, in order to constitute extortion. If a ministerial officer should use his authority, or any process of law in his hands, for the purpose of owing or seducing any person into paying him a bribe, that would doubtless be extortion." The facility which office affords to oppression is apparent, and it has been said that it is extortion and oppression for an officer to take money for the performance of his duty, even though it be in the exercise of a discretionary power : 1 Bouvier Law Dict. (Rawle's ed.) title, Extortion. The fact that the office of school director

is of statutory and modern origin, and that no precedent can be found of the conviction of such officer of the offense of extortion is not conclusive : Commonwealth v. McHale, 97 Pa. 397 ; Commonwealth v. Young, 16 Pa. Superior Ct. 317, at p. 323.

5. Much that we have said relative to the first two counts applies as well to the counts charging a conspiracy to commit bribery. Without going into an elaborate discussion of the question, we feel warranted in saying that under the generally accepted modern definition of the crime bribery is not confined to the giving and receiving of rewards by a judge or other persons concerned in the administration of justice. We are speaking now of bribery that would be an indictable offense under the principles of the common law even in the absence of a statute applying to the particular officer. Justice MITCHELL of the Supreme Court, then a judge of the Common Pleas, stated the doctrine as follows : " The modern definitions of bribery clearly include as subjects of it, all persons with official conduct in any way connected with the administration of the government. There can be no doubt that a policeman in the performance of his duty is an officer within this definition : " Commonwealth v. Warren, 20 W. N. C. 378. But assuming that the act of a school director in corruptly accepting money as pay for his vote or influence in the appointment of teachers is not, technically speaking, bribery, we are not required to hold that the law is so lamentably defective as not to reach such a case. The law, as thus stated in Commonwealth v. McHale, 97 Pa. 397, at p. 410, would cover it : " We are of opinion that all such crimes as especially affect public society are indictable at common law. The test is not whether precedents can be found in the books, but whether they injuriously affect the public policy and economy." To hold that this offense belongs to that class would not be judicial legislation, but, as has been aptly said, would be simply " to apply old and well-established principles to a new set of facts : " Walsh v. Illinois, 65 Ill. 58.

6. We have pursued the discussion upon this branch of the case further than was absolutely necessary. It is to be constantly kept in mind that the substantive offense charged in the indictment is, not extortion, not bribery, but conspiracy, and upon this subject it has been authoritatively declared that a conspiracy at common law is a much broader offense than

that defined in section 128 of the Penal Code of 1860, and that that section does not, nor was it intended to interfere with the indictment and punishment of a common-law conspiracy: Wilson v. Commonwealth, 96 Pa. 56. " That which gives the crime of conspiracy its distinctive character is unity of purpose, unity of design, focalization of effort upon a particular project by the persons named in the indictment : " Commonwealth v. Zuern et al., 16 Pa. Superior Ct. 588. " But there may be confederations which are lawful, and you must therefore set forth some object of the confederates which it would be unlawful for them to attain singly, or which, if lawful singly, it would be dangerous to the public to permit to be attained by the combination of individual minds. For it is the object that imparts to the confederation its character of guilt or innocence : " Commonwealth v. McKisson, 8 S. & R. 420. In Mifflin v. Commonwealth, 5 W. & S. 461, Chief Justice GIBSON declared it to be well settled, " that there are acts which, though innocent when done by an individual, are criminal when done in concert," but conceded that they were not very satisfactorily defined. He then proceeded to show by the cases (we refer to this by way of illustration), that though a clandestine or runaway marriage is not indictable at the common law, yet that an indictment for having conspired to effect the escape of an infant, and for having in pursuance of such conspiracy actually assisted her to escape in the night, with a view to her marriage, could be sustained. He gave other illustrations of the general principle that there may be indictable criminality in a confederation to do an act which would not be indictable or even unlawful, if done by an individual, and concluded the discussion by remarks so peculiarly pertinent here that we quote them at length. " Even had the precedents not reached the case before us, there would be no reason why the law of conspiracy should stop short of it now, considering the smallness of the point from which it started, and the degree of its subsequent expansion. In Lord Coke's day it was limited to ' a consultation and agreement between two or more, to appeal or indict a person falsely and maliciously : ' 3 Inst. 143 ; since when it has spread itself over the whole surface of mischievous combinations. . I am not one of those who fear that the catalogue of crimes will be unduly enlarged by its progress,

seeing as I do, that it is never invoked except as a corrective of disorder which would else be without one, and as a curb to immoderate power to do mischief which is gained by a combination of the means." The doctrine of that case has been applied or distinctly recognized in Twitchell v. Commonwealth, 9 Pa. 211, Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173, where many illustrative cases are cited ; and in Commonwealth v. Bartilson, 85 Pa. 482, where PAXSON, J., said: " According to all the authorities the conspiring is the essence of the charge and if that be proved the defendants may be convicted. . . . The overt acts set forth do not constitute the offense. They are the evidence of it, and are sometimes said to be aggravation of it. An overt act may or may not be unlawful per se. It is because of its relation to an unlawful combination that it becomes obnoxious to the criminal law." It has been suggested, that, where the thing to be done by the conspirators is such as is not indictable when performed by one, it must, to constitute the basis of an indictable conspiracy, be of a nature to be particularly harmful by reason of the com bination, or else the case must be one in which there is a particular power in combining. Not all wrongful things are of such nature : 2 Bish. Crim. Law (5th ed.) sec. 182. In Commonwealth v. Carlisle, Brightley's Rep. 36, GIBSON, J., stated the rule thus : " Where the act is lawful for the individual, it can be the subject of conspiracy when done in concert, only where there is a direct intention that injury shall result from it, or where the object is to benefit the conspirators to the prejudice of the public or the oppression of individuals, and where such prejudice or oppression is the natural and necessary consequence." This case will stand either of the tests above suggested. We are not dealing with a case where the act charged as the object of the conspiracy would be either innocent or lawful, if done by an individual. For a school director to exact from an applicant for appointment as teacher pecuniary reward for the performance of his official duty in that regard, or to accept money or thing of value in corrupt payment for giving his vote or influence for the appointment of such applicant, is an immoral, illegal and corrupt act, obviously harmful to the public interests, and, if the money is extorted by color of his office, prejudicial to the person from whom it is exacted and received.

Even if that unlawful and corrupt act is not indictable at common law or under our statute—a point we are not prepared to concede—we have no hesitation in concluding that, by reason of the "immoderate power to do mischief" which is gained by such combination, it is an indictable misdemeanor for school directors corruptly to combine and confederate amongst themselves, or with others, to obtain gain or profit out of their offices by such means.

It follows from what we have said that the first twelve assignments must be overruled. In passing upon them we have incidentally disposed of the questions raised by assignments numbered twenty-six to thirty-six inclusive.

7. The thirteenth and fourteenth assignments of error relate to questions raised by the motion to quash; the first of which grew out of the fact that the bill was sent before the grand jury by the district attorney without a previous hearing and commitment or binding over of the defendants. It was developed on the hearing of the motion to quash, that there had been an investigation of the charges which are the subject-matter of the bill by a committee appointed by the board of public education; that the committee had reported that certain members of the board of directors of the 28th section and one or more other persons required and received from teachers, or from their families or friends, money for services and votes attending the appointment or placing of teachers in the public schools in that section; that pursuant to a resolution of the board of public education a communication reciting the above facts and accompanied by a copy of the testimony taken before the investigating committee was placed in the hands of the district attorney for his consideration and action; that after an examination of this testimony and other investigation the district attorney deemed the matter of sufficient public importance to warrant him in preferring this and other bills before the grand jury; that thereupon the bill was prepared by his assistants under his direction and supervision and the district attorney's name subscribed thereto by his clerk by express direction of the former; that the district attorney took the bill to one of the judges of the court and stated the result of his investigation. We now quote his language: "Judge BEITLER agreed with me that the matter was of sufficient public importance to pre-

fer the bills, and authorized me, and in fact directed me, to send those bills before the grand jury. I went in person with the bills before the grand jury and the witnesses were then called and the bills were found." On the back of the bill appears this indorsement: "Presented to the grand jury by district attorney by authority of A. M. BEITLER, Judge;" but it is not alleged that this indorsement was written by the judge or was placed on the indictment by his express direction. We have referred to the action of the board of public education and its committee, not with a view of suggesting, much less holding, that the investigation conducted by them was the legal equivalent of a hearing before a committing magistrate—for it was not—but for the purpose of showing that the district attorney did not act hastily, inadvisedly or arbitrarily, or exercise his power to proceed in this way in order to suit the mere pleasure or convenience, or gratify the caprice or malevolence, of any private individual. That the district attorney may prefer a bill of indictment without a previous binding over or commitment of the accused is well settled ; but the exercise of this extraordinary power is always subject to the supervisory control of the court. See Sadler's Crim. Procedure sec. 186 and cases there cited. " Besides the intelligence, integrity and independence, which always must be presumed to accompany high public trust, the accused, unjustly aggrieved by such procedure, has the official responsibility of the officer to look to. If an attorney general" (now district attorney) "should employ oppressively, this high power, given to him only to be used when positive emergencies or the special nature of the case requires its exercise, he might be impeached and removed from office for such an abuse. The court, too, whose process and power is so misapplied, should certainly vindicate itself by protecting the citizen. In practice, however, the law officer of the commonwealth always exercises this power cautiously; generally under the directions of the courts, and never unless convinced that the general public good demands it : " Per KING, P. J., in Lloyd and Carpenter's Case, 3 Clark's Cases, 188. Where the court sanctions and approves it, and a motion to quash is refused, the appellate court will not reverse unless there be an abuse of discretion " both manifest and flagrant : " Rowand v. Commonwealth, 82 Pa. 405 ; Commonwealth v. Green, 126 Pa. 531 ;

Commonwealth v. Beldham, 15 Pa. Superior Ct. 33; Commonwealth v. Sheppard, 20 Pa. Superior Ct. 417. There is nothing of that kind in this case. The public nature of the offense called to the notice of the district attorney, and the manner in which this was done, were such as to make it his duty to take some action, and not wait supinely for some private prosecutor to invoke the process of the criminal law against the alleged offenders. He was justified in taking the initiative; and whether this was the only mode in which he could have proceeded or not, it is not clear that he abused the power which the law gave him by preferring a bill without a previous commitment or binding over, or that the court was guilty of an abuse of its discretion in sanctioning that mode of procedure. See Commonwealth v. Hurd, 177 Pa. 481, and Commonwealth v. Dietrich, 7 Pa. Superior Ct. 515.

8. Counsel insist that the facts which justify the presenting of what is called a district attorney's bill must be alleged of record; but we cannot find that this proposition, or the proposition that the record must show a motion in open court and leave granted prior to the presentation of the bill, is sustained by the authorities. Doubtless the mode of procedure indicated in the latter proposition, when practicable, would be more regular, and the court, whose approval is essential, may insist that it shall be followed; but we cannot say that the fact that the record fails to show affirmatively that it was followed is absolutely fatal on appeal. Indeed, the authorities go so far as to hold that there may be cases where the ends of justice would be defeated by the delay and publicity of a motion in open court for leave to send up an indictment, and that in such cases the district attorney may act upon his own responsibility, subject, however, to the subsequent revision and approval of the court: Rowand v. Commonwealth, 82 Pa. 405. But in this case the district attorney did not act on his own responsibility alone; and even if the indorsement on the indictment is not part of the record, the fact therein set forth, namely, that the act of the district attorney had the sanction of the judge, is established by the testimony, and is undisputed. Moreover, the court's approval of the action may fairly be presumed from its subsequent refusal to quash. " In such cases, that is, where the indictment is sent up by the district attorney without first

obtaining the leave of the court, the discretion of the court may be invoked, and is exercisable upon motion to quash. If the court refuses to quash, this, ordinarily, is equivalent to giving its sanction. If the court sustains the motion to quash, this is tantamount to refusing its approval of the action of the district attorney: " Commonwealth v. Sheppard, supra. See also Commonwealth v. Beldham, supra.

9. The indictment purported to be signed by the district attorney; as matter of fact his signature was affixed thereto by his express direction; the district attorney, in person, laid the bill thus signed before the grand jury, and by other unequivocal acts avowed his individual and official responsibility therefor. In view of these facts we are unable to conclude that the court erred in refusing to quash because the signature was not written with his own hand. At the same time we are not to be understood as commending the practice, much less as holding that the duty of signing bills of indictment, imposed upon district attorneys by the Act of May 3, 1850, P. L. 654, may be effectually performed by a clerk, or even a deputy, under a general authorization by the district attorney to sign his name. We overrule the assignment upon the special facts above set forth.

10. The question raised by the eighteenth assignment of error is as to the time when peremptory challenges ought to be made. As has been said repeatedly the right of peremptory challenge is not of itself a right to select but a right to reject jurors. Was the right denied, or the accused unduly hampered in the exercise of it, by the rulings complained of ? The court held that when a juror has been called and sworn upon his voir dire, and after being examined and cross-examined has been found not to be subject to challenge for cause, the peremptory challenge should be made, if it is to be made at all, before another juror is called and examined as to his qualifications. The defendants' counsel contended that the right may be exercised at any time up to the moment the impaneled jury is sworn; and in support of their contention they show by numerous citations that such is the practice in many of the states. In Pennsylvania, however, the matter is regulated by statute, and the question as above presented turns upon the construction of the statute. It will not be out of place to refer briefly to the state of the law, prior thereto. By the common law of Eng-

land in all capital cases, in which only peremptory challenges were allowed, the accused might challenge thirty-five of the jurors peremptorily.   On the part of the prosecution as many might be challenged peremptorily as the king, or the prosecuting officer, might think fit.   The statute, 33 Edward I, provided that "if they that sue for the king will challenge any of those jurors, they shall assign of their challenge a cause certain, and the truth of the same challenge shall be inquired of according to the custom of the court," etc.: Roberts's Digest of British Statutes, *328.   This statute deprived the prosecution of the right of peremptory challenge, which had theretofore been unlimited, and compelled the prosecuting officer to assign a cause certain for his challenge, but left the practice as to the time of showing cause, and the determination of the truth of the cause assigned to be regulated "according to the custom of the court."   This furnished ground for the construction, which from the earliest times was given to the statute, that cause of challenge on the part of the prosecution need not be shown until the whole of the panel was gone through. Out of this grew the practice of standing aside such jurors called in the case as the prosecuting officer saw fit, whereby he was enabled to hold in reserve his right of challenge as to them until it was determined that a full panel could not be obtained without them.   In 2 Bac. Abr. it is stated to have been "the established practice of the courts, that if the king shall challenge a juror before the panel is perused, he need not show any cause of his challenge till the whole panel be gone through and it appear that there will not be a full jury without the persons so challenged."   This gives some support to the suggestion of counsel in Haines v. Commonwealth, 100 Pa. 317, that, originally, a challenge preceded the standing aside of the juror, the right reserved being simply to assign cause of challenge after the whole panel had been called.   This suggestion, however, relates only to an unimportant matter of detail; and prior to the Act of March 16, 1901, P. L. 16, as amended by the Act of July 9, 1901, P. L. 629, it was the common, if not universal, practice in our courts, for the prosecuting officer, in his discretion, to direct the juror to "stand aside," without first formally and expressly challenging him.   This right was held to exist in misdemeanors as well as felonies, and notwithstand-

ing the enactment of laws giving the commonwealth a right to a certain number of peremptory challenges, and independently of the mode in which jurors were impaneled in the particular kind of a case to be tried. The practice was sustained by an unbroken line of decisions of the Pennsylvania courts, many of which are cited in Commonwealth v. Llewellyn, 14 Pa. Superior Ct. 214, and Commonwealth v. Kay, 14 Pa. Superior Ct. 376. The principal object aimed at in the act of 1901 was not merely the abolition of this practice of " standing aside " jurors, but the extinguishment of the right which lay back of it, and the establishment of a rule which would prevent its exercise in the future in that or any other mode. The first part of the general purpose was accomplished by declaring that it shall be unlawful for any district attorney " to stand aside jurors," and the second and most important part, by declaring, " all of which challenges shall be made and assigned by the commonwealth and the defendant respectively when the juror is called." By this act the commonwealth and the defendant are put on an equality, both as to the number of peremptory challenges, and as to the time when the right to make them is to be exercised. The language is plain and explicit. The right is to be exercised, not " when the jury is called," not " when the juror comes to the book," not " at any time before the impaneled jury is sworn," but " when the juror is called." If the legislature had intended that either the prosecuting officer or the defendant might hold his peremptory challenges in reserve until there were twelve jurors in the box as to whom no specific cause of challenge could be assigned, we are confident that they would not have used this expression, " when the juror is called." The right to challenge peremptorily includes the right, if demanded, to have the juror sworn on his voir dire, and to subject him to such examination as will enable the party to exercise his right of peremptory challenge intelligently: Comfort v. Mosser, 151 Pa. 455; Pointer v. United States, 151 U. S. 396 (14 Sup. Ct. Repr. 410). This incidental right is neither denied nor impaired by taking the words of the statute in their common and usual meaning. If an opportunity is afforded to exercise the right of peremptory challenge, and all that it implies, when the juror is called and brought face to face with the accused in the presence of the court, and the right is not ex-

ercised, it must be deemed to be waived; it cannot be held in reserve, arbitrarily, until a full jury is impaneled. It is to be noticed that we are speaking of a case where the jurors were called singly, not of a case where, under a rule of court adopted pursuant to the authority given in the proviso of the act of 1901, twelve jurors are called into the box at one time. The court below has adopted no standing rule upon the subject. Notwithstanding the earnest and able argument of the appellants' counsel in favor of the procedure contended for by them, we think the mode pursued in the court below was in accordance with the letter and spirit of the statute. Nor can we see that it was in derogation of the right of peremptory challenge belonging to the accused. See further upon this subject, St. Clair v. United States, 154 U. S. 134 (14 Sup. Ct. Repr. 1002), and Pointer v. United States, supra.

11. The question raised by the nineteenth assignment is, whether the district attorney should be required, in each instance, to " first declare his resolution as to challenging " before calling upon the defendant, or whether they should alternate in so doing. The court held that they should alternate, but not that a failure to challenge by either party was a waiver of one of the number of challenges allowed by law. This mode is fair to both parties. It tends to that equality which it is the general aim of the act of 1901 to secure, and, if not required, is certainly not forbidden by the act. Mr. Justice HARLAN, after showing that the practice is not uniform, concluded by saying : " But the general rule is, that where the subject is not controlled by statute, the order in which peremptory challenges shall be exercised is in the discretion of the court:" Pointer v. United States, 151 U. S. 396 (14 Sup. Ct. Repr. 410), citing, Commonwealth v. Piper, 120 Mass. 185; Turpin v. State, 55 Md. 462; Jones v. State, 2 Blackf. 475; State v. Hays, 23 Mo. 287; State v. Pike, 49 N. H. 399; State v. Shelledy, 8 Iowa, 477, 504; State v. Boatwright, 10 Rich. L. 407; Schufflin v. State, 20 Ohio St. 233. There is nothing in the case which affords the slightest ground for supposing that there was any abuse of discretion to the prejudice of the defendants. In any view that may be taken of the question of practice, this assignment must be overruled.

12. It was not competent to rebut the evidence introduced

by Travis to show his good character by evidence of specific criminal acts, as for example, that he was the instigator of an unlawful attempt to influence a juror called in the case. In Pennsylvania the mode of proving the good character of the accused is by evidence of general reputation, and the mode of rebutting it is by the same kind of evidence, not by evidence of particular acts of misconduct. As the offer (twentieth assignment) was made originally, it should have been rejected upon the ground that the evidence was not admissible for the purpose stated in the offer, namely to show " that Travis does not bear the character that the witness for character showed." But before any testimony was given under the offer, the district attorney amended it by stating that the purpose was to prove " that the ground of defense relied on by the defendants is false and dishonest." Evidence which, of itself, or taken in connection with other evidence in the case or offered to be introduced, would warrant a jury in finding that a party has corruptly influenced or attempted to corruptly influence a juror who has been or might have been impaneled in his case is competent. This subject was exhaustively considered in McHugh v. McHugh, 186 Pa. 197. True, that was a civil case, but the principle upon which such evidence is admissible applies with equal force in criminal case. Such conduct on the part of the accused, or instigated by him, gives rise to a stronger inference than flight; it stands on the same plane with the fabrication of evidence in his defense or the destruction of evidence to prove his guilt, and with an attempt to corrupt the commonwealth's witnesses; all of which acts may be proved: Cathcart v. Commonwealth, 37 Pa. 108 ; McMeen v. Commonwealth, 114 Pa. 300 ; Cover v. Commonwealth, 6 Cent. Repr. 585 ; 20 W. N. C. 386. But where the relevancy of an offer of evidence depends upon other facts not in evidence, it should be accompanied by an offer to prove those facts. It is not sufficient that they have been proved in another proceeding and are known to the judge and the opposite party. The offer under consideration was open to this objection, as well as to the objection that it was vague and indefinite ; but as the witness was not permitted to testify to the conversation between him and Semplar there was a failure to connect Travis with the attempted embracery. So that even if the offer was open to the objections last suggested, or

the objection that it was not strictly rebuttal, the error, if any, in not rejecting it in the first instance was harmless.   Viewing as a whole the rulings set forth in the twentieth assignment we find no substantial error of which the defendants have any real cause to complain, or which upon technical grounds, requires a reversal of the judgment and a retrial of the case.

13. Abel Evans testified that he was an applicant for the position of principal of the Rudolph Walton school; that pursuant to a message purporting to come from Joseph Travis, one of the defendants, he called upon Travis; that in the conversation that then took place Travis told him other applicants were offering money for the position, and if he wished to secure it he must pay $1,000; that when the witness declared he could not consider it, Travis urged him to think it over, and left him with that injunction; that some weeks later, pursuant to another message from Travis, he called upon him at the place designated and at that conversation Travis proposed first that he pay $700, then $500, and then $300, all of which propositions the witness rejected; that on the same evening, before going to meet Travis, he met Seixas, who told him to listen to what Travis had to say and take his advice; that on two occasions he met Brown, who told him, on the first, it was necessary to pay for all city salaried positions according to the salary, and on the second, that whatever Travis said was all right and the witness could depend on it.   Every material fact testified to by the witness, which tended in the slightest degree to inculpate the defendants, was unequivocally denied by them. In rebuttal the commonwealth was permitted to show that immediately after the time of these alleged occurrences Abel Evans narrated them to William M. Brown substantially as he had narrated them upon the witness stand.   The admission of this testimony in rebuttal is the subject of the seventeenth assignment of error.   Similar rulings as to the consonant statements of Rene Haydock and Alice J. Orrell are the subjects of the fifteenth and sixteenth assignments.   In Commonwealth v. Kay, 14 Pa. Superior Ct. 376, we had occasion to review the Pennsylvania cases upon the subject of the admissibility of proof of the previous statements of a witness consonant with his testimony, and reached the conclusion that a mere conflict of testimony is not, alone, a sufficient reason for the admission

of such proof.   Nor do we think the general rule as to hearsay testimony ought to be relaxed even though the conflict be such as is explainable only upon the theory that one or the other of the opposing witnesses has wilfully fabricated his testimony.   We agree with the defendants' counsel that such contradiction as this is not, of itself, sufficient cause for permitting either witness to corroborate his story by getting third persons to take the stand and say that he had told them the same thing.   We also agree with them in saying that if there were nothing more in this case than the mere conflict of testimony above set forth, this assignment should be sustained. But the defendants did not content themselves with a bare denial of the facts testified to by the commonwealth's witnesses.   It is plain that they sought, by their testimony and by their cross-examination of the commonwealth's witnesses, to show that the latter had a motive, or were under an outside influence, in giving their testimony which tended to discredit them.   In the case of the witness Evans one theory of the defense was that he was actuated by resentment on account of his failure to obtain the position he sought.   Upon his cross-examination the fact was emphasized that he had been defeated, the manifest purpose being to enable the jury to infer that this fact influenced him improperly and prejudicially to the defendants.   Indeed, when he alluded to the fact that he did not get Seixas's support, counsel said: "I know you didn't.   That is the trouble.   We would not have been here, or you either, if you had—is it not the fact that you went there to get his support?"   It may be said that the proper way to counteract this imputation of counsel thus irregularly interjected was to ask the court to direct the jury to disregard it.   Of course that might have been done; but the charge had been made, the jury's recollection of it could not be effaced, and it might be argued with some plausibility, to say the least, that the defendants ought not to complain that the surer method of destroying its effect was resorted to.   But entirely apart from any impression the statement may have made upon the minds of the jurors, it shows that we have not misunderstood the purpose had in view in drawing out and emphasizing the fact that the witness had been defeated in his application.   The rebutting testimony related to a time prior to his defeat; its purpose and

effect were to repel the inference that his story was fabricated to gratify his resentment or malice towards the defendants on account of his defeat. In the case of Rene Haydock, who testified that she paid $40.00 a month for three months to Johnson, the alleged go-between, ground was laid in cross-examination for impeaching and discrediting her by proof of her contradictory statements, and portions of what was alleged to be her testimony before the investigating committee were read to her in the hearing of the jury for the evident purpose of showing that it varied in some particulars from her present testimony. Further she was compelled to admit that she paid the money, crediting the defendant's statement that it was to be used to bribe members of the board who belonged to the opposing faction, and that she knew this was improper. Thus ground was laid for arguing to the jury that she was particeps criminis and that testimony coming from such tainted source might well be doubted. Whether this alone would make her unsworn consonant statements admissible is a question which we need not and do not decide in this case. We have no doubt that it might properly have been taken in consideration in connection with other special circumstances in determining the question of the admissibility of such statement. The testimony was admissible for other reasons applicable to all three instances referred to in these assignments. Allusion is made in the opinion of the learned judge overruling the motion for new trial, as well as in the appellee's brief, to the assertions of defendants' counsel in their opening and closing arguments to the effect that the case of the commonwealth was a conspiracy entered into for the purpose of destroying the power of the defendants in the school board. But these remarks of counsel are not reproduced in the report of the trial sent up with the record; nor is the opinion of the court overruling the motion for new trial a part of the record. Obviously, therefore, if the rulings complained of cannot be sustained without resort thereto, these assignments must be sustained. Confining our attention to the record proper we remark, in the first place, that the denial of the testimony of these three witnesses was put in such terms as to be tantamount to a charge that in each instance it was a pure fabrication. Such being the effect of their testimony, the defendants, very naturally,

would desire to show, directly or inferentially, the existence of a motive which may have prompted, and probably did prompt, these witnesses to fabricate such accusations against them. Much of their own testimony and of the cross-examination of the commonwealth's witnesses seem to have been directed to that end. They showed to some extent by the cross-examination of two of the directors called by the commonwealth, and more fully by their own testimony, that the school board had been divided into factions ; they asserted that one of these directors, McIntyre, was the leader of the opposing faction, and that he and some of his associates had been especially bitter and constant in their opposition ; apparently for the purpose of furnishing a motive for this hostility, it was shown that Seixas, when made president in April, 1902, did not appoint these members upon any committees : they elicited upon the cross-examination of McIntyre the admission not only that he had been active in securing evidence for the commonwealth, but that he " was active in seeing the case ventilated in the start," and in his opposition to the methods of the temporarily dominant faction to which the defendants belonged ; and they asserted that at the time of the trial he was an avowed candidate for Seixas's place as president of the board. We think it plainly discoverable from the record of the evidence, taken as a whole, that one theory of the defendants was that this prosecution was the culmination of the factional contest between them and certain other members of the board, and that the witnesses Abel Evans, Rene Haydock and Alice J. Orrell, who were still employed as teachers at the time of the trial, were then under the influence of the defendants' factional opponents. We doubt whether the jury would have accepted this theory, even if the rebutting evidence had not been given, but we cannot say that counsel would have exceeded the latitude allowed them if they had argued to the jury upon that theory and had asked them to draw the inference above suggested. And it is to be borne in mind that it was sufficient for the defendants' purpose to create in the minds of the jurors a reasonable doubt. While it is not in general permissible to support a witness by evidence that he had made former statements similar to his testimony, yet there are well-recognized exceptions to the general rule. The authorities generally agree, that in contradic-

tion of evidence tending to show that the witness's account of the transaction was a fabrication of recent date, it may be shown that he gave a similar account before its effect and operation could be seen, or before there could have been any inducement to fabricate; also that where he is charged directly or inferentially, with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made a similar statement when the imputed motive did not exist, or when motives of interest would have induced to make a different statement of facts. The leading Pennsylvania cases are collected and reviewed in Commonwealth v. Kay, supra, and we need not go over them again. The statements of the witnesses put in evidence in rebuttal were made before the public accusation against the defendants and the consequent investigation had been made and at a time when the relations between the witnesses and the defendants were such as to preclude the idea that the former had any inducement to side against the latter, much less to fabricate false accusations against them, and when it was not to their interest, but would have been against their interest, to do so. In view of all the special circumstances we cannot say that the court committed error in admitting them for the purpose of repelling the unfavorable inference, which, otherwise, the jury might have drawn. Some comment is made upon the remarks of the trial judge in his charge relative to this testimony; but these are not assigned for error. Doubtless more specific instructions as to the legal effect of this kind of evidence would have been given if they had been requested.

14. In view of Abel Evans's testimony as to the manner in which he was received at the first interview above referred to with Joseph Travis, we cannot say that the jury would not have been warranted in finding that the man who left the card with Mrs. Evans was Travis or a messenger sent by him. For when, pursuant to the message left with Mrs. Evans, he went to Travis's house the latter received him with the request that he take a walk with him, as he had something to say to him, and then proceeded to make the proposition heretofore referred to. But whether he was the man who left the message with Mrs. Evans or not, we think her evidence (twenty-fourth assignment) was competent for the purpose of showing, in connection

with her son's testimony, that Evans sought Travis pursuant to what he supposed, and had reason to suppose, was the latter's request, and not of his own motion.    This was not a fact of very great importance, it is true, but we are of opinion that it was provable as part of the res gestæ.

15. It is argued that where an indictment charges four defendants with conspiracy among themselves and with other unknown persons, it is error to charge the jury that they cannot acquit three defendants and convict one.    Whether or not this is error depends upon the evidence.    It is certainly not error where, as is the case here, there is no evidence that any other person than those named in the indictment was in the conspiracy ; so that it was sufficiently accurate in this case to say to the jury, that "You will have a right to bring in a verdict of guilty as to all, or not guilty as to all, or not guilty as to one or two and guilty as to the others, but you cannot acquit three and convict one, because the agreement must be made by two." As all four defendants were convicted it is hardly worth while to take up further time in the discussion of the twenty-fifth assignment.

16. With regard to the twenty-second and twenty-third assignments of error it seems sufficient to say that no harm was done the defendants' case by sustaining the objections to the general questions put to Seixas and Travis, since in each instance the rulings were followed by specific questions which covered the whole ground, and which they were permitted to answer without objection.

We find no error in this record for which we would be justified in reversing the judgment.

All the assignments of error are overruled, the judgment as to each defendant is affirmed, and the record is remitted to the court below, with direction that the several sentences be fully carried into effect ; and to that end it is further ordered and directed, as to each of the defendants who was released on bail pending the appeal pursuant to the order of supersedeas, that he be remanded forthwith to the custody of the warden of the penitentiary for the eastern district of Pennsylvania and serve out so much of the period of imprisonment prescribed by his sentence as had not expired on the date of his admission to bail as aforesaid.